Jay E. NOWAK, Plaintiff,

v.

TRANSPORT INDEMNITY COMPANY, a foreign corporation, Defendant-Appellant,

AMERICAN INTERSTATE INSURANCE COMPANY OF WISCONSIN, a domestic corporation, Defendant-Respondent.

Court of Appeals

*No. 84–011. Submitted on briefs July 10, 1984.—Decided September 5, 1984.*

For defendant-appellant Transport Indemnity Company the cause was submitted on the briefs of *Schellinger & Doyle, S.C.*, with *James G. Doyle* and *Timothy J. Strattner* of counsel, of Brookfield.

For defendant-respondent American Interstate Insurance Corporation of Wisconsin the cause was submitted on the briefs of *Otjen & Van Ert, S.C.*, with *Donald P. Schneider* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser, J., and Michael T. Sullivan, Reserve Judge.

WEDEMEYER, P.J.   Transport Indemnity Company (Transport) appeals from an order of the trial court entered in accordance with its declaratory judgment dismissing American Interstate Insurance Company (AII) as a codefendant in this pending tort action. Transport seeks reinstatement of AII as a defendant and a declara-

tion that AII is the primary insurance carrier. Based on the parties' agreed statement in lieu of record, we hold that the trial court erred in dismissing AII. Additionally, we hold AII to be the primary insurance carrier in this action.

Plaintiff Nowak's cause of action arises from injuries he received in a single vehicle truck accident in March, 1981. When the accident occurred, Lee Verhalen, the owner and operator of the truck, was hauling goods provided by International Transport, Inc. under a trip-lease agreement with International. Nowak was Verhalen's friend and was merely along for the ride. Nowak alleges in his complaint that Verhalen, who died in the accident, negligently caused his injuries. The dispute on appeal is between International's insurer, Transport, and Verhalen's insurer, AII.

Pursuant to federal statutes and regulations of the Interstate Commerce Commission, International is required to assume liability to third parties for damages caused by the negligent actions of its haulers, such as Verhalen, under trip-lease agreements. By an ICC-mandated endorsement to International's policy with Transport, Transport, the insurer, agreed to pay judgments against International based on this liability.[1]

---

[1] Based on ICC Form BMC 90, International's policy endorsement stated in part:

The policy to which this endorsement is attached is . . . hereby amended to assure compliance by the insured . . . with Section 215 of the Interstate Commerce Act and the pertinent rules and regulations of the Interstate Commerce Commission.

[T]he Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment recovered against the insured for bodily injury to or death of any person . . . resulting from negligence in the operation, maintenance, or use of motor vehicles under . . . permit issued to the insured by the Interstate Commerce Commission . . . .

. . . .

Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation,

But International's policy with Transport also provided:

EXCESS INSURANCE. If at the time of an Occurrence to which this insurance applies there is any other valid and collectible insurance, including any amount of self-assumed risk, commonly referred to as "self-insurance" applicable to the same Occurrence, then the insurance provided by this policy with respect to that Occurrence shall be excess of any such other insurance or self-assumed risk.

Verhalen's policy with AII contained no similar clause or other type of disclaimer based on other applicable insurance.

Based on the excess insurance clause quoted above, Transport moved for a declaratory judgment that its liability to Nowak was limited to coverage beyond the limits of Verhalen's policy with AII.

The trial court, however, granted judgment dismissing AII from the action. The court found that the only source of Verhalen's liability to Nowak was paragraph seven of the trip-lease agreement, whereby Verhalen agreed to hold International harmless for liability resulting from his negligence.[2] The trial court reasoned that

---

or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

[2] Paragraph seven of the trip-lease agreement stated in part:

7. During the existence of this contract, the Carrier assumes liability for bodily injuries to or the death of any person (except

because AII's policy disavowed coverage for liability assumed under contract, AII was therefore released from liability to Nowak.[3]

AII concedes that the trial court erred in identifying the trip-lease agreement as the source of Verhalen's liability to Nowak. The true source is the common law governing tort actions, which grants to injured parties the right to pursue claims against their alleged tortfeasors. That a contract incorporates or restates a preexisting common law duty of care does not establish the contract as the source of that duty. *See Daily Express, Inc. v. Northern Neck Transfer Corp.*, 490 F. Supp. 1304, 1307–09 (M.D. Pa. 1980). The trial court erred by dismissing AII from this action.

AII contends, however, that we should affirm its dismissal for other reasons it first argues on appeal. In support of its contention, AII cites language in its policy excluding coverage if Verhalen used his vehicle as a

---

the Hauler, or the employees, agents or servants of the Hauler) or for the loss or damage to the property of others (except that of the Hauler, or the employees, agents or servants of the Hauler) resulting from the negligent operation, maintenance or use of the vehicle . . . . The Carrier shall maintain insurance for the aforesaid liabilities, injuries, losses or damages as required by the I.C.C. regulations under 49 U.S.C. 10927. The Carrier assumes responsibility to the I.C.C. and the U.S.D.O.T., the Public Service Commission and the Motor Vehicle Department of any state or province having jurisdiction for the use of the equipment described in Appendix A during the existence of this contract. Notwithstanding the foregoing, Hauler agrees to hold Carrier harmless of any liability, loss, damage, adjusting and investigating expense and costs (including reasonable attorney fees) incurred by Carrier as a result of any act or omission of the Hauler in the performance of this Contract, including the use, operation and maintenance of the equipment described in this contract.

[3] AII's policy with Verhalen stated in part:

This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement; . . . .

"public or livery conveyance." AII then sets forth various "facts" in its brief to support the contention that Verhalen was operating his vehicle as a public or livery conveyance at the time of the accident. The "facts" used by AII in its argument to this court do not, however, appear in the parties' agreed statement in lieu of record presented to this court. We therefore do not address the issue. Should AII decide to pursue this contention further, the necessary factual record may be developed before the trial court.

Having held that AII should remain a party to this action, we turn to the issue of which insurance carrier should be deemed primarily liable should Nowak prevail on his claim.[4] AII argues that this question is controlled by the federal statutes and regulations which impose on International the duty to maintain insurance to protect the public while it engages in interstate commerce. 49 U.S.C. sec. 10927 (a) (1) (1982) provides in part:

The Interstate Commerce Commission may issue a certificate or permit to a motor carrier . . . only if the carrier files with the Commission a bond, insurance policy, or other type of security approved by the Commission . . . . The security must be sufficient to pay, not more than the amount of the security, for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles under the certificate or permit, or for loss or damage to property . . . or both. A certificate or permit remains in effect only as long as the carrier satisfies the requirements of this paragraph.

[4] We decide the issue of primary liability although the trial court found it unnecessary to address this question, except in passing, because of AII's dismissal from the case. Because we can reasonably expect further litigation on this issue both at the trial and appellate court levels, we deem it appropriate to decide it now in the interest of judicial economy. *See State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963).

Additionally, 49 U.S.C. sec. 11107(a)(4) (1982) provides that the ICC may require carriers using leased vehicles to: "[H]ave control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."

Regulations of the Interstate Commerce Commission supplement these statutes. 49 C.F.R. sec. 1057.12(k)(1) (1983) requires that trip-lease agreements "clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to Commission regulations under 49 U.S.C. 10927." 49 C.F.R. pt. 1043 (1983), entitled "Surety Bonds and Policies of Insurance," sets forth the ICC's regulations concerning the type and amount of insurance referred to in 49 C.F.R. sec. 1057.12(k)(1). Also, 49 C.F.R. sec. 1057.12(d)(1) supplements 49 U.S.C. sec. 11107(a)(4) by requiring:

(d) *Exclusive possession and responsibilities*—(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

AII argues that this federal regulatory scheme demonstrates an intent to impose primary liability on the licensed carriers, regardless of the parties' contractual arrangements. It cites cases from three jurisdictions where this intent has been read into the federal insurance requirements. *See Hagans v. Glens Falls Insurance Co.*, 465 F.2d 1249 (10th Cir. 1972); *Argonaut Insurance Co. v. National Indemnity Co.*, 435 F.2d 718 (10th Cir. 1971); *Allstate Insurance Co. v. General Fire and Cas-*

*ualty Co.*, 348 F. Supp. 682 (E.D. Pa. 1972) ; *Transport Indem. Co. v. Carolina Cas. Ins.*, 652 P.2d 134 (Ariz. 1982). *See also Aetna Casualty and Surety Co. v. Arkin*, 365 F. Supp. 813 (N.D. Ill. 1973) ; *Federal Insurance Co. v. Allstate Insurance Co.*, 341 A.2d 399 (Md. App. 1975).

This court, however, favors the view of the majority of courts addressing this issue, which leaves the question of allocating coverage among the insurers to the contractual arrangements of the parties and any applicable state law. This view, which we adopt here, is "that once the public is protected by the existence of an adequate fund, the purpose of the regulations is fulfilled and the parties and their insurers are free to allocate responsibility among themselves."[5] *Carolina Cas. Ins. Co. v. Transport Indem. Co.*, 533 F. Supp. 22, 25–26 (D. S.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir.), *cert. denied*, 74 L. Ed. 2d 66 (1982).

In *Carolina Cas. Ins. Co. v. Insurance Co.*, 595 F2d 128 (3rd Cir. 1979), the court framed the issue as "whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which private agreements or state laws would otherwise allocate the ultimate financial burden of the injury." *Id.* at 138. The court concluded:

While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties. . . . [W]here the case is "concerned with responsibility as between insurance carriers," and not with

---

[5] On a related issue, in *Continental Ins. Co. v. Daily Express, Inc.*, 68 Wis. 2d 581, 229 N.W.2d 617 (1975), the supreme court decided that the federal laws and regulations did not nullify indemnity agreements between carriers (lessees) and haulers (lessors) for reimbursement to the carrier for damages to its goods resulting from the hauler's acts.

the federal policy of protecting the public, "I.C.C. considerations are not determinative" and a court should consider the express terms of the parties' contracts. [Footnote and citation omitted.]

*Id.* The Fifth Circuit Court of Appeals has noted that the purposes of the federal regulatory scheme are not served by an "automatic extinguishment of [an excess insurance] clause insofar as it affects the insured or other insurers . . . ." *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.,* 569 F.2d 304, 312 (5th Cir. 1978). *See also Grinnell Mut. Reinsurance Co. v. Empire Fire & Mar. Ins.,* 722 F.2d 1400 (8th Cir. 1983), *cert. denied,* 80 L. Ed. 2d 540 (1984) ; *Transport Indem. Co. v. Paxton Nat. Ins. Co.,* 657 F.2d 657 (5th Cir. 1981), *cert. denied,* 455 U.S. 982 (1982) ; *Daily Express, Inc. v. Northern Neck Transfer Corp.,* 490 F. Supp. at 1306; *Marwell Const., Inc. v. Underwriters at Lloyd's, London,* 465 P.2d 298 (Alaska 1970) ; *Ryder Truck Lines, Inc. v. Carolina Cas. Ins. Co.,* 385 N.E.2d 449 (Ind. 1979) ; *Great West Cas. Co. v. Mallinger Truck Line,* 640 S.W.2d 479 (Mo. App. 1982) ; *Truck Ins. Exch. v. Transport Indem. Co.,* 591 P.2d 188 (Mont. 1979) ; *Transport Indemnity Co. v. Rollins Leasing Corp.,* 541 P.2d 1226 (Wash. App. 1975).

We conclude that the purposes of the federal regulatory scheme are fulfilled here by the "existence of an adequate fund." *Carolina Cas. Ins. Co. v. Transport Indem. Co.,* 533 F. Supp. at 25. We therefore turn to Wisconsin law to determine which insurer is primarily liable. The supreme court has stated that "where there are two applicable insurance policies, the provisions of each will be given effect if possible." *Schoenecker v. Haines,* 88 Wis. 2d 665, 672, 277 N.W.2d 782, 785 (1979). Transport's policy provided that the policy was excess insurance where there was "any other valid and collectible insur-

ance." AII's policy, which provided Verhalen valid and collectible insurance, contained no such disclaimer. Therefore, AII must assume the role of primary insurer, as a matter of contract.

■

In concluding, we deal briefly with two additional arguments posed by AII. First, it claims that the following language in Transport's policy, mandated by the ICC, overrides the excess insurance clause:

> Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment . . . .

When this clause is read in the context of the remainder of the endorsement, however, *see* note 1, *supra,* it is seen as one more means by which the ICC has acted to protect *the public.* It serves primarily to assure payment by the insurer to an injured party, regardless of policy violations by the insured or attempts by the insurer to thwart the ICC's purpose by limiting its policy coverage. It protects the insurer by requiring reimbursement by the insured for any claim paid pursuant to this endorsement that would otherwise not be paid. It does not and is not meant to protect the interests of other insurance carriers. *See Carolina Cas. Ins. Co. v. Ins. Co.,* 595 F.2d at 136–37; *Transport Indemnity Co. v. Rollins Leasing Corp.,* 541 P.2d at 1229.

AII additionally contends that a provision of the triplease agreement limits its liability to $1,000, regardless of its status as the primary carrier. It relies on paragraph nine of the trip-lease agreement, which states: "The Hauler [Verhalen] shall reimburse the carrier up to and including the amount of One Thousand Dollars

($1,000) for any loss or damage incurred by the carrier as a result of any negligent act or omission of the hauler . . . ."

As Transport points out, however, the language in paragraph nine refers to reimbursement for the carrier's loss; paragraph seven is the operative clause concerning the parties' agreement regarding liability to third parties. *See* note 2, *supra*. There, Verhalen agreed to hold International harmless for any *liability* it incurred as a result of his negligence.

To summarize this decision, we reverse the trial court's order and direct the trial court to reinstate AII as a defendant. We further conclude that AII is the primary insurer and Transport the excess insurer under the terms of the respective policies carried by their insureds. If AII has a policy defense based on Verhalen's status as a public or livery conveyance, facts to establish this defense must be presented to the trial court.

*By the Court.*—Order reversed and cause remanded with directions.