CONTINENTAL NATIONAL AMERICA INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. AETNA LIFE AND CASUALTY COMPANY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—1811

Opinion filed August 1, 1989.

Winston & Strawn, of Chicago (Paul P. Biebel, Jr., and Thomas R. Bearrows, of counsel), for appellants.

Cassiday, Schade & Gloor, of Chicago (D. Patterson Gloor and Michael G. Thomas, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

We are asked to review the issue of whether an insurance policy underwritten for the lessor of a truck, or a different insurance policy underwritten for the lessee of the truck, provides coverage for an accident involving the truck. An amended complaint for declaratory judgment and an amended counterclaim seeking the same relief brought this matter to issue, followed by a motion and cross-motion for summary judgment on the issue of which policy applied. The circuit court declared that both policies of insurance provided co-primary coverage for the truck's lessor, lessee and driver. Plaintiffs/cross-defendants Continental National America Insurance Company and Glen E. Meyer Cartage Company (sometimes collectively CNA) appeal.

Plaintiff/cross-defendant Glen E. Meyer Cartage Company (Meyer) is an Illinois corporation engaged in the business of transporting "various materials" such as dirt, sand and gravel within Illinois. Defendant/counterplaintiff F. Smith Cartage, Inc. (Smith), also an Illinois corporation, similarly transports "materials" within the State. On March 30, 1983, Smith and Meyer entered into a written agreement whereby Meyer leased to Smith a 1972 Mack truck for three years, and under which they agreed that for the "duration" of the lease the truck would remain in Smith's "exclusive possession, control, use and re-

sponsibility during the periods the vehicle is operated by or for [Smith]." Another paragraph in the agreement obligated Smith to "maintain and provide insurance coverage for the protection of the public pursuant to the requirements of section 18—701 of the Illinois Motor Carrier of Property Law[2] and the requirements of the Illinois Commerce Commission promulgated thereunder." The lease further provided Smith with a Meyer employee, Junior Martin (Martin), to drive the truck.

On June 18, 1984, the leased truck, driven by Martin, collided with an automobile, fatally injuring the automobile's driver, Michael McLeod (McLeod). The special administrator of McLeod's estate filed a wrongful death claim in the circuit court of Cook County (*McLeod* or *McLeod* claim) and, in his amended complaint filed April 24, 1986, named Smith, Martin and Glenn E. Meyer, owner of Meyer, as defendants.

CNA, liability insurer for Meyer and Martin, filed a complaint on January 29, 1986, and on September 16, 1986, an amended complaint, for declaratory judgment. CNA, among other things, alleged: it tendered defense of *McLeod* to defendant/counterplaintiff Aetna Casualty & Surety Company, liability insurer for Smith (sometimes collectively Aetna); Meyer "enjoyed liability coverage under [Smith's] policy with Aetna"; and "Aetna was the primary insurer of the leased truck under the terms of the lease agreement and the insurance policies," which Aetna denied and refused to defend *McLeod*. CNA requested that the circuit court declare Aetna the primary insurer, "obligated to defend *** Martin and Meyer in the suit brought by McLeod's Administrator" and find CNA the excess insurer for purposes of the *McLeod* litigation.

Aetna answered the complaint and filed a counterclaim and an amended counterclaim for declaratory judgment in which the first count requested that the circuit court declare neither Martin nor Meyer qualified as insureds under the Aetna policy, relieving Aetna of any burden to defend or indemnify them against allegations raised in *McLeod*. In count II, Aetna sought a ruling that, with regard to *McLeod*: CNA and Aetna must bear equally the expenses incurred defending Smith; Meyer's CNA policy obliges CNA to provide Meyer and Martin with primary coverage; and the Aetna policy purchased by Smith provides no coverage to Meyer.

CNA moved for summary judgment, to which Aetna responded

[2]Ill. Rev. Stat. 1983, ch. 95½, par. 18—701 (current version at Ill. Rev. Stat. 1987, ch. 95½, par. 18c—4901).

and filed its own cross-motion for summary judgment. Aetna asked the circuit court in its motion to find CNA the primary insurer of Martin, Smith and Meyer for the *McLeod* claim. Each party subsequently filed replies in support of their motions and responses to the opposing parties' objections.

The circuit court declared that "each carrier *** shall bear 50% of the expense involved in defending each defendant in the underlying action and each carrier shall bear 50% of any indemnification obligation which shall arise up to the limits of their respective policies of insurance." CNA appeals.

CNA identifies error in the circuit court's failure to find Aetna obligated to furnish primary coverage to Meyer, Martin and Smith in the *McLeod* claim and CNA responsible only for excess coverage.

The parties stipulated below to the material facts defining this case, including the operative clauses of the insurance contracts and the leasing arrangement between the insureds; this court may decide the issue, therefore, as a matter of law. *Rockford Mutual Insurance Co. v. Schuppner* (1989), 182 Ill. App. 3d 898, 902.

CNA initially asserts that Aetna must assume primary coverage because Meyer and Martin each qualify as an "insured" under the Aetna policy, pursuant to the provisions of Aetna's "Who Is Insured" clause:

> "2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow ***.
>
> * * *
>
> 4. The owner or anyone else from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:
> a. Is being used exclusively in your business, and
> b. Is being used pursuant to operating rights granted to you by a public authority."

That same policy, CNA continues, contains an "Other Insurance" clause, the emphasized terms of which bind Aetna to provide primary coverage for injuries resulting from use of a vehicle "hired or borrowed" by Smith:

> "1. This policy's liability coverage is primary for any covered auto *while hired or borrowed by you and used exclusively in your business and pursuant to operating rights granted to you by a public authority.* This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.
>
> * * *

3. Except as provided in Paragraphs 1 and 2 above, this policy provides primary insurance for any covered auto you own and excess insurance for any covered auto you don't own." (Emphasis added.)

CNA raises as well the "Other Insurance" provision in the CNA policy as proof that the leasing of trucks to others by Meyer requires CNA to provide merely excess insurance.

"1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. *This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.*" (Emphasis added.)

CNA cites cases in which courts found that certain insurance contract provisions placed responsibility for public safety on the lessee to a lease agreement because the lessee actually controls the vehicle. CNA analogizes the Interstate Commerce Commission (ICC) regulations, which prompted these provisions, to sections of the Illinois Commercial Transportation Law (Ill. Rev. Stat. 1987, ch. 95½, pars. 18c—4901, 18c—4904), requiring Illinois motor carriers to obtain insurance for the protection of the public, and pursuant to which Smith assumed the obligation to provide insurance under the lease. *Allstate Insurance Co. v. General Fire & Casualty Co.* (E.D. Pa. 1972), 348 F. Supp. 682, 685; *Transport Indemnity Co. v. Carolina Casualty Insurance Co.* (1982), 133 Ariz. 395, 405-06, 652 P.2d 134, 144-45. See also *Mustang Transportation Co. v. Ryder Truck Lines, Inc.* (E.D. Pa. 1981), 523 F. Supp. 1097, 1105.

Aetna responds that CNA's attempt to fix the parties' responsibility through the lease term requiring Smith to obtain insurance improperly binds the insurance carriers to contractual obligations concluded between their insureds and third persons. (*Carolina Casualty Insurance Co. v. Underwriters Insurance Co.* (5th Cir. 1978), 569 F.2d 304, 313.) Instead, Aetna insists, this court must limit its consideration to the terms of the insurance contracts. In *Occidental Fire & Casualty Co. v. International Insurance Co.* (7th Cir. 1986), 804 F.2d 983, however, the Seventh Circuit interpreted trucker policies similar to the contracts at bar and concluded that the insurance policy issued to the lessor, extending excess coverage to any truck it leased, demonstrated that the insurance company anticipated, when it wrote the policy, the possibility its insured would enter into leasing agreements and the insureds' lease did not alter the insurer's contractual obliga-

tions "by collateral agreement." (*Occidental Fire & Casualty Co. v. International Insurance Co.*, 804 F.2d at 990 n.3.) Quoting *Truck Insurance Exchange v. Liberty Mutual Insurance Co.* (1981), 102 Ill. App. 3d 24, 26, 428 N.E.2d 1183, the court continued: " 'By its endorsements [the insurer] acknowledged that it was providing insurance pursuant to the lease. The respective policies, accompanying endorsements, and the lease so far as incorporated into the insurance contract, are *construed together to determine the parties' intention.'* " (Emphasis added.) 804 F.2d at 990 n.3. See also *Nowak v. Transport Indemnity Co.* (1984), 120 Wis. 2d 635, 642-44, 358 N.W.2d 294, 298-99.

At bar, the contract between Smith and Meyer bound Meyer to lease "Equipment to [Smith] for [Smith's] exclusive possession, control, use and responsibility *during the periods* the vehicle is operated by or for [Smith]." (Emphasis added.) "During," as used here, Aetna contends, illustrates that Smith's use, control and possession of the truck was not truly exclusive but rather subject at all times to interruption by Meyer. Indeed, another lease provision stated: "Nothing herein shall be construed as preventing [Meyer] from entering into a subsequent Lease of the same equipment during the duration of this Lease ***." Aetna reinforces this conclusion by noting: the truck was "regularly" stored in Meyer's garage during the lease term; Martin at all relevant times remained Meyer's employee; Smith surrendered 90% of gross revenues earned through the truck's use to Meyer; Meyer used the truck for its own business purposes "from time to time" during the lease period; and at the time of the accident, the truck bore the names of both companies, although only Smith's Illinois Commerce Commission permit number was displayed on the vehicle and the truck operated by the authority of that number.

The "Other Insurance" provision of the Aetna policy, however, obligates Aetna to provide primary coverage only for "any covered auto while hired or borrowed by [Smith] and used exclusively in [Smith's] business and pursuant to operating rights granted to [Smith] by a public authority." CNA attempts to compare favorably the lease terms with the Aetna policy by reading the "Other Insurance" provision as "while being used exclusively in your business." The word "while," however, modifies only the phrase "hired or borrowed by you," indicating Aetna's duty to provide primary coverage arises only when Smith leases a truck which is used exclusively in Smith's business, *not subject to interruption by the lessor*. The "and" separating "while hired or borrowed by you" and "used exclusively in your business"

binds the phrases together, creating a relationship between them rather than an expression of separate elements, as though the phrases read "while hired or borrowed by you and *while* used exclusively in Smith's business." See *Hailey v. County Board of School Trustees* (1959), 21 Ill. App. 2d 105, 111-12, 157 N.E.2d 570.

■ This distinction is called into sharper relief when the "Other Insurance" provision quoted above is compared to the "Who is Insured" clause found in the same policy. Paragraph 4 includes as an insured the "owner or anyone else from whom" Smith leases a vehicle "while the covered auto:

> a. Is being used exclusively in your business, and
>
> b. Is being used pursuant to operating rights granted to you by a public authority."

Although punctuation inserted in an insurance contract cannot be manipulated to alter the plain meaning of the text, rules of grammar may be consulted as an aid to construction to illumine the "true meaning of the language used." (2 G. Couch, Cyclopedia of Insurance Law §15:13, at 156-57 (rev. ed. 1984).) The colon placed after "auto" incorporates all the elements enumerated thereafter (*Lunt v. Aetna Life Insurance Co.* (1925), 253 Mass. 610, 616, 149 N.E. 660, 662), so that the sentence also could be read as "while the covered auto is being used exclusively in your business and while the covered auto is being used pursuant to operating rights granted to you by a public authority." The distinction between these provisions is clear. Aetna must indemnify as an insured the owner or permissive driver of an automobile for liability incurred while the vehicle is exclusively under Smith's control, even if Smith does not enjoy singular control over the vehicle at every moment during the lease period. Aetna is obliged to extend *primary* coverage to that insured, however, only when Smith exclusively and continuously possesses, controls or uses the leased vehicle, throughout the lease term.

■ Because Aetna is not a "primary insurer" as contemplated in paragraph 1 of its "Other Insurance" provision, reference there must be made to paragraph 3 of that section, which reads:

> "3. Except as provided in Paragraphs 1 and 2 above, this policy provides primary insurance for any covered auto you own and *excess insurance for any covered auto you don't own.*" (Emphasis added.)

Aetna correctly concludes that, since Smith did not own the subject vehicle, it is required to supply only excess insurance upon entry of a judgment against its insured. CNA, however, is also liable merely for excess coverage pursuant to the similar "Other Insurance" clause

found in the CNA policy. A loss covered solely by two excess carriers renders the "Other Insurance" provisions irreconcilable, concealing each provision and forcing the insurers to divide the liability equally between themselves. *Transport Indemnity Co. v. Carolina Casualty Insurance Co.*, 652 P.2d at 140; *Truck Insurance Exchange v. Liberty Mutual Insurance Co.*, 102 Ill. App. 3d at 26; *Continental Casualty Co. v. Travelers Insurance Co.* (1967), 84 Ill. App. 2d 200, 206-07, 228 N.E.2d 141.

Under the foregoing circumstances, the circuit court's proration of responsibility on a 50-50 basis between Aetna and CNA was correct and must be affirmed.

Judgment affirmed.

SCARIANO and DiVITO, JJ., concur.