ROBERT E. LEE & ASSOCIATES, INC., Plaintiff,

v.

David J. PETERS, individually, and Peters Service Center, Inc., Defendants-Third-Party Plaintiffs-Counter-Defendants-Fifth-Party Plaintiffs-Sixth Party Plaintiffs,

v.

CARL KLEMM, INC., d/b/a Klemm Tank Lines, a Wisconsin corporation, Third-Party Defendant-Fourth-Party Plaintiff-Counter-Plaintiff-Respondent-Cross-Appellant,†

GREAT WEST CASUALTY COMPANY, Fourth-Party Defendant-Appellant-Cross-Respondent,

INTEGRITY MUTUAL INSURANCE COMPANY, Fifth-Party Defendant,

Richard CISLER, Sixth-Party Defendant.

Court of Appeals

No. 95–2884. Submitted on briefs November 5, 1996.—Decided March 18, 1997.

(Also reported in 563 N.W.2d 546.)

†Petition to review denied.

On behalf of Great West Casualty Company, the cause was submitted on the briefs of *Thomas L. Schober* and *Thomas V. Rohan* of *Schober & Ulatowski, S.C.* of Green Bay.

On behalf of David J. Peters and Peters Service Center, Inc., the cause was submitted on the briefs of *Warren Wanezek* and *Frank W. Kowalkowski* of *Soquet, Wanezek, Umentum & Jaekels, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Great West Casualty Company, the liability carrier for Carl Klemm, d/b/a Klemm Tank Lines, Inc. (Klemm), a petroleum transporter, appeals an order declaring coverage under its comprehensive general liability (CGL) policy in a lawsuit arising out of a gasoline spill.[1] The circuit court decided that Great West's endorsement MCS-90, a federally required financial responsibility provision, negated the pollution exclusion clause in the CGL policy. Because the endorsement indemnifies the public in case of an uncollectible judgment against an insured, but does not otherwise change the underlying contract of insurance as between the insured and the insurer, we reverse the order.

Klemm cross-appeals the remaining summary judgment decision resolving certain coverage issues favorably to Great West under its CGL policy, which included a commercial auto coverage part (trucker's insurance). Because these coverage issues depend upon the resolution of disputed material facts, we reverse the remainder of the summary judgment and remand for further proceedings. Finally, we decline to address

---

[1] This court granted Great West's petition for leave to appeal a nonfinal order pursuant to § 808.03(2), STATS. The order vacated a previous summary judgment dismissing Great West from the lawsuit. Klemm cross-appeals the trial court's remaining summary judgment that decided other coverage issues favorably to Great West.

several arguments Great West makes for the first time on appeal.

In an earlier decision, *Robert E. Lee & Assocs. v. Peters*, 206 Wis. 2d 508, 557 N.W.2d 457 (Ct. App. 1996) (*Lee I*), we addressed insurance issues between David J. Peters, who owns and operates Peters Service Center, Inc., a Green Bay gas station where the spill occurred, and Peters' insurer, Integrity Mutual Insurance Company. The current appeal deals with issues between Klemm, the party who delivered the gasoline to Peters, and Klemm's liability insurer, Great West.

The summary judgment proofs for and against Great West's motion for summary judgment set forth the relevant evidence. The Peters' station stored gasoline in underground tanks. On the date of the spill, October 18, 1991, at about 9:15 p.m., Peters used a measuring stick to determine the amount of remaining unleaded gasoline in an 8,000 gallon tank. Peters measured the remaining gasoline at 23.5 inches, or 1,526 gallons, and ordered 6,000 gallons of fuel from Klemm. Klemm's employee, Richard Cisler, made the delivery for Klemm at approximately 11:45 p.m., two and one-half hours after Peters' measurement. Prior to pumping, Cisler measured only 22.5 inches of fuel, or 1,431 gallons in the tank prior to pumping. He then pumped 6,500 gallons of unleaded gasoline, or 500 gallons more than Peters ordered, but less than the remaining capacity of the tank if Cisler's measurement was accurate. According to Great West, Cisler saw nothing unusual and observed no evidence of a spill, although he noted that the cap for the fill pipe would not snap tightly shut.

The next day, Peters discovered gasoline in the manhole for the unleaded tank fill pipe and recognized that a spill had occurred. Peters promptly notified the

Wisconsin Department of Natural Resources and retained Robert E. Lee & Associates, Inc., an environmental consultant, to investigate the spill and develop a remediation plan. Lee's test results indicated that the groundwater in the vicinity of the service station was contaminated with unleaded gasoline.

The DNR investigated the spill, and ultimately issued a remediation order directed to Klemm from the division of enforcement based upon findings of fact and conclusions of law. During the course of investigation, Klemm, through its safety director, Gene Oleson, took the position that the spill resulted from product expansion and the presence of a broken fill cap on the underground storage tank. Cisler expressed a similar opinion, as did a DIHLR employee to whom the DNR addressed the issue of the cause of the spill. Although it included no express written finding whether expansion rather than a direct overfill caused the spill, the DNR concluded that Klemm was responsible under the provisions of ch. 144, STATS., for the discharge of hazardous substances.

The DNR ordered Klemm to further investigate the site to determine the extent of the contamination and submit a remediation plan. Klemm's consultant excavated soil from the site, constructed monitoring wells and analyzed numerous soil samples. The test results indicated that the soil contamination was not the result of a single spill, but was instead caused by spills of gasoline prior to 1991, as well as the unleaded gasoline delivered by Klemm on October 18, 1991. Klemm has expended in excess of $100,000 toward the remediation.

Lee filed the initial lawsuit in this matter against Peters, seeking recovery for remediation services provided to Peters. Among the various legal maneuvers,

Peters joined Klemm, alleging negligence and seeking damages for losses associated with the spill. Klemm in turn joined its CGL insurer, Great West, and also filed a counterclaim against Peters for its costs associated with the DNR order to remediate. Klemm's counterclaim against Peters alleged that much of the contamination remediated through the cleanup was from gasoline spills prior to the Klemm spill. The circuit court initially granted summary judgment to Great West on all issues, including the question of its duty to defend; it later vacated part of that judgment, deciding a duty existed because coverage was available under the financial responsibility endorsement made part of the Great West CGL policy.

## COVERAGE UNDER CGL POLICY ENDORSE-MENT MCS-90

We first address the order vacating part of the summary judgment in favor of Great West and declaring coverage under the financial responsibility endorsement in the CGL policy. The order effectively grants a partial summary judgment to Klemm on this issue. 

We apply the summary judgment methodology set forth in § 802.08(2), STATS., de novo. *Wegner v. Heritage Mut. Ins. Co.*, 173 Wis. 2d 118, 123, 496 N.W.2d 140, 142 (Ct. App. 1992). The appropriate method in a summary judgment analysis has been stated often and warrants rereading but not repeating. *See In re Cherokee Park Plat*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). On summary judgment the burden is upon the moving party to establish the absence of a genuine, that is, disputed, issue as to any material facts with such clarity as to leave no room for

controversy. *Kraemer Bros. Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 565, 278 N.W.2d 857, 862 (1979). The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980). If the material is subject to conflicting interpretations or reasonable people might differ as to the significance of the material, it is improper to grant summary judgment. *Id.* The construction of an insurance policy presents questions of law that we review de novo. *American States Ins. Co. v. Skrobis Painting & Decor., Inc.*, 182 Wis. 2d 445, 450, 513 N.W.2d 695, 697 (Ct. App. 1994). Wisconsin law, however, dictates that any ambiguity in coverage clauses in an insurance contract be interpreted broadly in favor of the insured, while exclusionary clauses are narrowly construed. *Link v. General Cas. Co.*, 185 Wis. 2d 394, 399, 518 N.W.2d 261, 262 (Ct. App. 1994).

The Great West CGL endorsement, MCS-90, assures compliance with the federal Motor Carrier Act of 1980, §§ 29 and 30. The endorsement is set forth on a form provided by the Interstate Commerce Commission. The federal Act is codified at 49 C.F.R. § 387.1, et. seq.

We agree with Great West that the only purpose of the endorsement is the additional protection of the public, and it does not otherwise alter the coverage or exclusions of the underlying insurance contract between the principals. First of all, there is the language of the endorsement itself:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of

liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 . . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement . . . shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. *However, all terms, conditions and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.* (Emphasis added.)

Case law also supports our conclusion that the endorsement protects the public from losses attributable to insolvent tortfeasors, and otherwise does not alter the contract.

*Travelers Ins. Co. v. Transport Ins. Co.*, 787 Fd.2d 1133, 1140 (7th Cir. 1986), held:

The purpose of the federal statute and regulations is to insure than an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. However, once it is clear that there are sufficient funds available to safeguard the public, the inquiry changes: "[t]he pertinent question is whether the federal policy of assuring compensation for loss to the public prevents the courts from examining the manner in which private agreements *or state laws* would otherwise allocate the ultimate financial burden of the injury." *Insurance Co. of North America*, 595 F.2d at 138 (emphasis added).

We agree with the majority view that "I.C.C. public policy factors are frequently determinative where protection of a member of the public is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection." *[Carolina Cas. Ins. Co. v.] Underwriters [Ins. Co.],* 569 F.2d [304,] 313 [(5th Cir. 1978)].

Another more recent case from the seventh circuit holds that these endorsements "do not affect the terms of the agreement between insurer and insured . . . ." *American Inter-Fidelity Exch. v. American Re-Ins. Co.,* 17 F.3d 1018, 1022 (7th Cir. 1994).

The third circuit has reached a similar conclusion. *Carolina Cas. Ins. Co. v. INA,* 595 F.2d 128, 140 (3rd Cir. 1979), held: "[T]he federal motor carrier requirements do not displace rights and duties which the insurance contracts and state law would otherwise create . . . ."

While a conflicting view can be found in other federal decisions, Wisconsin, albeit in a different context from the present dispute, has adopted "the majority view." *Nowak v. Transport Indem. Co.,* 120 Wis. 2d 635, 358 N.W.2d 294 (Ct. App. 1984), addressing the question which of two insurance carriers provided primary coverage, adopted a similar position, stating: "[O]nce the public is protected by the existence of an adequate fund, the purpose of the regulations is fulfilled and the parties and their insurers are free to allocate responsibility among themselves." *Id.* at 642, 358 N.W.2d at 298 (quoting *Carolina Cas. Co. v. INA.,* 533 F.Supp. 22, 25-26 (D. S.C. (1981)). We conclude that, as between insured and insurer, the endorsement does not alter the provisions of the CGL policy. Great West, therefore,

does not provide coverage to Klemm under the financial responsibility endorsement.[2]

## KLEMM'S CROSS-APPEAL

We now turn to Klemm's cross-appeal of the remainder of the summary judgment that survived the order. In light of our coverage analysis set forth hereafter, we first address the circuit court's conclusion that *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), negates Great West's duty to defend.

In fairness to the circuit court, the court of appeals decisions upon which we now rely to reverse were issued after the trial court decision. The circuit court interpreted *Edgerton* to excuse Great West from a duty to defend on grounds that the claim against Klemm was a claim for environmental cleanup and remediation costs under CERCLA were not "damages" in context of a CGL policy.

██

We have declined to apply *Edgerton* in circumstances similar to those presented here. In *Edgerton*, the DNR directive to the insured to remediate his site was held not to constitute a "suit" for "damages." *Id.* at 771, 517 N.W.2d at 473. Here, however, Klemm is the defendant in a lawsuit filed against him by Peters, alleging negligent delivery and discharge of gasoline causing damages, including "business interruption." In *General Cas. Co. v. Hills*, 201 Wis. 2d 1, 548 N.W.2d

---

[2] Great West also presents an argument that the endorsement required under § 194.41, STATS., Wisconsin's financial responsibility law relating to contract motor carriers does not alter the relationship between insured and insurer. Because Klemm does not advance an argument regarding the state law, we need not deal with it.

100 (Ct. App. 1996), we decided that *Edgerton* did not preclude insurance coverage for environmental contamination damages to the property of a third party. Although the supreme court has accepted a petition to review of *Hill*, unless it is reversed, it is precedent for distinguishing *Edgerton*. We reached a similar result concerning liability coverage in *Sauk County v. Employers Ins.*, 202 Wis. 2d 434, 550 N.W.2d 439 (Ct. App. 1996).

We now turn to question whether the completed operations exclusion found in Great West's "Commercial Auto Coverage Part Truckers Insurance Form" bars coverage. First, the coverage provision reads:

### A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of . . . "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

In response, Great West asserts the policy exclusion for "Completed Operations:"[3]

### B. EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

---

[3] Great West advances no argument that there is no coverage under this provision of the commercial auto policy if a spill occurred at time of delivery. Thus, unless the completed operations exclusion is engaged based upon a spill caused by expansion, Great West has tacitly conceded liability under this provision for damages "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "

## 10. COMPLETED OPERATIONS

"Bodily Injury" or "Property Damage" arising out of your work after that work has been completed or abandoned.

In the exclusion, your work means:

**a.** Work or operations performed by you or on your behalf . . . .

**Your work will be deemed completed at the earliest of the following times:**

**(1) When all the work called for in your contract has been completed.** (Emphasis added.)

■

Whether the completed operations exclusion applies depends on whether the spill occurred at delivery or later when the fuel expanded. The parties' summary judgment proofs present a disputed material fact as to when the spill occurred, and application of the exclusion depends upon a resolution of that dispute. A fact finder could reasonably infer from Peters' measurement of the remaining fuel that Cisler's delivery of 6,500 gallons of unleaded gasoline exceeded the tank's capacity when it was pumped. A contrary reasonable inference also exists that Cisler's measurement made several hours later was accurate and therefore the spill was caused by expansion. If the tank was less than full when Cisler completed pumping, the completed operations exclusion applies and Great West is not liable.

Great West contends that only one reasonable inference can be drawn as a matter of law, and that no reasonable fact finder could infer from Peters' measurement alone that Cisler overfilled the tank at delivery. It points to evidence that measurements of contents of underground tanks are not precise, that

Cisler's measurement was contemporaneous with the delivery, and that Cisler observed no physical evidence of a spill. We reject Great West's contention.

The inability to make a precise measurement by the stick method, used by both Peters and Cisler, strengthens Klemm's contention that alternative inferences can be drawn from the evidence. We note that neither side points to evidence of the amount of sales of gasoline, if any, between the two measurements. Further, Cisler's statement of his observations at time of delivery are subject to credibility determinations by a fact finder. We reject the use of summary judgment under the circumstances.[4]

Great West makes an additional assertion, however, to resolve the question when the spill occurred. It argues that Klemm is "judicially estopped" from asserting coverage based upon a theory that the spill occurred at delivery. It bases its assertion upon Klemm's position before the DNR that the spill was expansion based. Klemm submitted an opinion to this effect from its safety director to the DNR investigator along with Cisler's statement that he observed no sign of a spill at the time of delivery.

▮ Klemm suggests that because Great West did not assert a judicial estoppel in the circuit court, it should not be allowed to do so now. We agree. Great West has failed to give any record citation to demonstrate that it raised the issue before the circuit court, and we have discovered none. The trial court's written decision makes no reference to an issue of judicial estoppel.

---

[4] Klemm also contends without reference to authority or persuasive argument that even if the spill resulted from expansion, Klemm's operation was not completed until the expansion occurred. We are not persuaded and reject the argument.

Appellate courts generally will not review an issue raised for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980).

It is worth noting that even where the doctrine is raised, its use is at the discretion of the trial court. *State v. Petty*, 201 Wis. 2d 337, 346-47, 548 N.W.2d 817, 820 (1996). No doubt this is so because judicial estoppel is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery. *See id.* at 346, 548 N.W.2d at 820. In light of the absence of a showing that the trial court improperly exercised its discretion, we decline to address the issue on its merits.

We next address the pollution exclusion in Great West's CGL policy:

**2. Exclusions**

This insurance does not apply to:

. . . .

**f.(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

. . . .

**(d)** At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

**(i)** if the pollutants are brought on or to the site or location in connection with such operations; or

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

██

The plain language of this exclusion applies to a site or location where the insured or others working for him "are performing operations." Thus, it is relevant only if the spill occurred at the time of delivery. In other words, if the fact finder determines that an overfill occurred while delivery was being performed and not from an expansion later, the exclusion will apply.

Great West also relies upon the "Wrong Delivery of Liquid Products" exclusion in the auto policy. This provision excludes:

### 13. WRONG DELIVERY OF LIQUID PRODUCTS

"Bodily injury" or "property damage" resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the "bodily injury" or "property damage" occurs after delivery has been completed. Delivery is considered completed even if further service or maintenance work, or correction, repair or replacement is required because of wrong delivery.

██

The plain language of this exclusion applies only when there is a delivery to the wrong receptacle or address, or the wrong liquid. It does not apply to an excess delivery.

The parties next dispute whether the personal injury coverage in the CGL policy applies. It would seem that we decided this issue contrary to Klemm's position in *Lee I* and therefore do not address it again, nor need we address Great West's contention that the pollution exclusion excludes coverage under the personal injury provisions.

Great West asserts for the first time several other exclusions in its two liability policies and again Klemm's reply relies upon its insurer's failure to raise these defenses in the circuit court. The absence of any record reference from Great West and our review of the record suggests that these defenses were not raised in the trial court. These untimely arguments invoke the "handling of property exclusion" in the commercial auto form, the "use of auto" exclusion in the CGL policy.[5] We decline to address these matters raised now for the first time.

To summarize, although coverage is not available under the financial responsibility endorsement MCS-90 of the CGL policy, Great West does owe a duty to defend Klemm against potential liability for Peters' claims. Whether Great West is entitled to invoke the completed operations exclusion of its commercial auto policy is contingent upon a resolution of disputed facts. Great West is not liable to Klemm under the personal injury provision of its CGL policy in light of our holding in *Lee I*. Because Great West did not raise the issue in the circuit court, we decline to address the exclusions under the "handling of property exclusion" or the "use of auto" exclusion.

We therefore reverse the order declaring coverage under the CGL endorsement and reverse and remand for a factual resolution of the issues determining the remaining coverage issues.

---

[5] If it were necessary to address the "use of auto" exclusion on the merits, the language of the exclusion is narrowly construed in favor of the insured. *Link v. General Cas. Co.*, 185 Wis. 2d 394, 399, 518 N.W.2d 261, 262 (Ct. App. 1994).

*By the Court.*—Judgment and order reversed and cause remanded.