Mac R. McDONALD and Patricia McDonald, Plaintiffs-Appellants and Cross-Respondents,

v.

CENTURY 21 REAL ESTATE CORPORATION, a wholly owned subsidiary of Trans World Corp., and Century 21 Real Estate of the Midwest, Inc., Defendants-Respondents and Cross-Appellants,

CENTURY 21 BLACKMON REALTY, INC., Richard Blackmon and Interlease Group, Inc., f/k/a Agrico Lease, Inc., Defendants-Respondents.†

Court of Appeals

*No. 84–1717. Argued December 17, 1985.—Decided May, 1 1986.*

(Also reported in 390 N.W.2d 68.)

---

† Petition to review denied.

1

For the plaintiffs-appellants and cross-respondents there were briefs by *Habush, Habush & Davis, S.C.,* of Madison, and oral argument by *Daniel A. Rottier.*

For the respondents Century 21 Blackmon Realty, Inc., and Richard Blackmon, there was a brief by *James C. Bohl* and *Quale, Hartmann, Bohl & Evenson* of Baraboo, and oral argument by *James C. Boyl.*

For the defendants-respondents and cross-appellants there were briefs by *W. John Pritchard* of Milwaukee, and oral argument by *W. John Pritchard.*

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J.   Mac and Patricia McDonald appeal from a judgment on a verdict finding that Century

21 Real Estate Corporation, Century 21 Real Estate of the Midwest, Inc., Century 21 Blackmon Realty, Inc., and real estate agents Richard Blackmon and Jane Franzen negligently performed a listing contract with the McDonalds. The issues are: (1) whether the jury instruction on damages recoverable in tort was erroneous; and (2) whether the court erred in failing to increase the tort damage award to an amount consistent with the amount awarded under the McDonalds' contract claim against other defendants; and (3) whether the McDonalds have proven a claim in tort, an issue raised by Century 21's cross-appeal. Because we conclude the McDonalds have not proven a tort claim, we reverse and vacate the award of tort damages without reaching the other issues raised on appeal.

## FACTS

In early 1980 the McDonalds entered a listing contract with Century 21 Blackmon Realty, Inc. of Sauk City to sell the McDonalds' substantially completed 24-room home and adjoining lot. The house is unusual. Most rooms open on the sizeable indoor pool. The house and lot were listed at $130,000. The contract provided that the realtor would "prequalify" all prospective buyers. "Prequalify" was not defined, and the parties dispute its meaning.

In August 1980, Douglas Larson contacted Blackmon's agent, Jane Franzen, to view the McDonald home. Larson represented himself as president of Agrico Lease, Inc., which he described as a large agricultural equipment lease broker.

Larson viewed the home on two occasions. Agrico subsequently made a purchase offer of $90,000. The

McDonalds were dissatisfied with the offer but, on Franzen's advice, did not reject it. Instead, Franzen arranged a meeting between Larson and Mac McDonald. That meeting resulted in executed purchase contracts for the lot and house for a total price of $100,000. Financing was to be by land contract.

Believing the house sold, the McDonalds began developing another lot and laying the foundation for their new home. In order to complete as much of the job as possible before closing, Mac McDonald took all of the workers from his contracting business off existing jobs and put them to work at the new home site.

In mid-September, Larson notified Blackmon that Agrico did not intend to go through with the purchase. When Blackmon notified the McDonalds of this turn of events, Mac McDonald began looking into the backgrounds of both Larson and Agrico. He discovered that Larson had a large number of civil judgments entered against him and one criminal conviction. He also found that Agrico had not registered with the Wisconsin Secretary of State until after the McDonalds had accepted its offers to purchase.

Closing was scheduled for October 15, 1980 at the Blackmon Agency's offices. Douglas Larson's father, Al Larson, appeared on behalf of Agrico and refused to close because of alleged defects in the property.[1] As a result, the McDonalds claim they were unable to pay obligations incurred in the construction of their new home, were unable to undertake new contracting jobs, and suffered damage to their credit reputation.

The McDonalds brought suit against Agrico, Douglas Larson, Al Larson, Century 21 Blackmon Realty,

---

[1] Larson said he had discovered that the home was located in the river's flood zone and that its septic system was defective.

Inc., Richard Blackmon, Blackmon agent Jane Franzen, and the parent Century 21 Corporations, alleging they were vicariously liable for the acts and omissions of the local agency.[2] The complaint against Agrico and the Larsons alleged breach of the purchase contracts. The complaint against the realtors set out claims in both breach of contract and negligence based upon an alleged failure to "prequalify" Agrico and Larson. A few days before trial, the McDonalds elected to proceed against the realtors only on a tort theory.

Agrico defaulted at trial. The jury returned a special verdict finding the realtors negligent in the manner in which they represented the McDonalds, and awarded $15,000 damages. The jury also found that Agrico had breached the purchase contracts, and awarded contract damages of $100,000. The McDonalds appeal. Century 21 Real Estate Corporation and Century 21 Real Estate of the Midwest, Inc., cross-appeal.

## *NEGLIGENCE*

We first address the cross-appeal because if cross-appellants prevail, the McDonalds' issues become moot.

---

[2] Defendant Al Larson was dismissed prior to trial. Defendants Jane Franzen and Doug Larson were dismissed at the start of the trial. None of them are parties to this appeal. These parties have been before this court before. *McDonald v. Century 21 Real Estate Corp.,* 111 Wis. 2d 600, 331 N.W.2d 606 (Ct.App. 1983). In that case we concluded that the trial court erred by granting summary judgment for Century 21 and Century 21 of the Midwest because there was an issue of material fact regarding the apparent agency of the Blackmon brokerage.

5

The McDonald complaint alleges that: "Century 21-Blackmon Realty, Inc., Richard Blackmon and Jane M. Franzen, did each act in a careless and negligent fashion in the manner in which they failed to pre-screen Agrico Lease, Inc., Douglas Larson and Al Larson before allowing these latter defendants to enter into the offers to purchase. . . ." "Pre-screening" apparently refers to the prequalification term of the listing contract.

Wisconsin does not recognize an inherent cause of action for every negligent performance of a contractual obligation. "In order for such a cause of action in tort to exist, a duty must exist independently of the performance of the contract. According to this test, the existence of a contract is ignored when determining whether [the] alleged misconduct is actionable in tort."[3] (Citation omitted.) *Dvorak v. Pluswood Wisconsin, Inc.,* 121 Wis. 2d 218, 220, 358 N.W.2d 544, 545 (Ct. App. 1984). " 'The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract. . . .' " *Land-*

---

[3] The Wisconsin Supreme Court has adopted the following rule from 38 Am. Jur. *Negligence,* sec. 20: "Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort." *Colton v. Foulkes,* 259 Wis. 142, 146, 47 N.W.2d 901, 903 (1951); *Landwehr v. Citizens Trust Co.,* 110 Wis. 2d 716, 722, 329 N.W.2d 411, 414 (1983). "The 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort. . . . [T]here must be a duty *existing independently of the performance of the contract* for a cause of action in tort to exist." (Emphasis added.) *Landwehr,* 110 Wis. 2d at 723, 329 N.W.2d at 414.

*wehr v. Citizens Trust Co.,* 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983), quoting W. Prosser, *Handbook of the Law of Torts,* sec. 92, at 617–18 (4th ed. 1971).

There has been continuing confusion in the law as to the question of whether a breach of contract is actionable in tort. *Landwehr,* 110 Wis. 2d at 720, 329 N.W.2d at 413. The common law has evolved to recognize differences between civil actions for breach of contract and for tort. Causes of action in tort and contract have historically had different purposes and protected different interests.

However, the McDonalds argue that the law of Wisconsin is that "the negligent performance or nonperformance of a duty created by a contract may constitute actionable negligence," *Presser v. Siesel Construction Co.,* 19 Wis. 2d 54, 59, 119 N.W.2d 405, 408 (1963), and that the contract "imposes the standard of care and the obligation to the plaintiff." *Id.*

We think the more recent cases, like *Dvorak* and *Landwehr,* better state the law by differentiating between duties imposed by the law and obligations assumed under contract.[4] "[T]orts consist of the breach of duties fixed and imposed upon the parties by the law itself, *without regard to their consent to assume them. . . .*" (Emphasis added.) W. Prosser, W. Keeton, *Prosser and Keeton on The Law of Torts,* sec. 1, at 4 (5th ed.

---

[4] The McDonalds also suggest that *Ford v. Wisconsin Real Estate Examining Bd.,* 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970), stands for the proposition that a real estate broker is liable in tort for a violation of his or her instructions from the principal. They have misread the case. *Ford* deals with a realtor's tortious refusal to show a home to a black buyer at the insistence of his principal, the seller. There was no dispute between the seller and the broker.

1984).[5] Where a tort duty coincides with an obligation undertaken via contract, either a contract or a tort action will lie for its breach. *Id.* at sec. 1, at 5. "The true source [of liability] is the common law governing tort actions, which grants to injured parties the right to pursue claims against their alleged tort-feasors. That a contract incorporates or restates a preexisting common law duty of care does not establish the contract as the source of that duty." *Nowak v. Transport Indemnity Co.,* 120 Wis. 2d 635, 639, 358 N.W.2d 294, 297 (Ct.App. 1984). Because the McDonalds have not pressed a contract claim, we must determine whether respondents breached any common law duty owed to the McDonalds without regard to the terms of the listing contract.

## FAILURE TO PREQUALIFY

The McDonalds' central contention is that respondents negligently failed to prequalify Agrico or Larson as a prospective buyer. They argue that a reasonable credit and background check would have disclosed that Agrico was not qualified to do business in Wisconsin and that Doug Larson had both civil judgments and a criminal conviction entered against him. We are not

---

[5] Put another way: "Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. *They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed.*" (Emphasis added.) *Prosser and Keeton,* sec. 92 at 656.

persuaded that any common law duty to make such an inquiry exists. The obligation to prequalify was one voluntarily undertaken by Franzen on behalf of the brokerage as a term of the listing contract.

"In most situations, where a party to a bargaining transaction renders a service . . ., there would have been no duty to render that service . . . except for the voluntary undertaking to do so. That being so, the contract or bargaining transaction normally defines the scope of the obligation. . . ." *Prosser and Keeton,* sec. 92 at 657. *"[Therefore t]here is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made."* (Emphasis in original.) *Id.* Because the McDonalds have cited no authority imposing a common law duty to prequalify, we conclude that respondents' failure to do so is not actionable in tort.

## NEGLIGENT MISREPRESENTATION

Contract obligations are created to enforce promises like that of respondents' to prequalify prospective buyers. However,

> there is a fundamental distinction between a representation and a promise. A representation is a statement by the representer as to his existing state of mind regarding the existence of past or present fact. Therefore, such liability as is imposed on a representer for stating something that proves to be false must be based on a tort theory.

*Prosser and Keeton,* sec. 92, at 656. If respondents negligently misrepresented their ability to prequalify prospective purchasers or negligently represented Agrico

9

and Larson as qualified buyers, a cognizable action might lie in tort. However, the McDonalds did not allege negligent misrepresentation or proceed under that theory, and they continue to insist that this is not such a case.

Because the McDonalds proved no other feasible cause of action in tort, we conclude that judgment was erroneously granted against respondents. We reverse and vacate the associated award of damages. By so doing, we need not reach the issues on appeal.

*By the Court.*—Judgment reversed. Award of damages vacated.