## AUTUMN GROVE JOINT VENTURE, Plaintiff-Appellant,

v.

## Joel RACHLIN, Dana's Deli, Inc. and Randall S. Kurtz, Defendants-Respondents.†

Court of Appeals

*No. 85–1633. Argued August 8, 1986.—Decided March 25, 1987.*

(Also reported in 405 N.W.2d 759.)

† Petition to review filed. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff-appellant there were briefs and oral argument by *David J. Cannon* of *Michael, Best & Friedrich* of Milwaukee.

For the defendant-respondent there was a brief and oral argument by *William H. Vettel* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   This is a case where a counterclaim alleged tort and requested punitive damages. The trial court persuaded the claimant to change the allegation to one of breach of contract rather than tort, leaving the impression that punitive damages would still be allowed. The court was in error in two respects. First, it abused its discretion in instigating an amendment

from tort to contract on the day of trial and then to a different contract theory at the close of trial because it prejudicially surprised the party defending against the counterclaim. Second, its actions prejudiced the claimant because punitive damages are not allowed for breach of contract. We reverse in the interests of justice and remand the cause for a new trial.

The only facts necessary to an understanding of the issues on appeal are: Randall S. Kurtz purchased the net assets of a restaurant business after obtaining oral consent from the landlord, Autumn Grove Joint Venture, to an assignment of the lease of the premises. Shortly after commencing operations, questions arose regarding payment for common area charges in the surrounding shopping center, heating bills, sewer odors and a fire protection system. Autumn Grove claimed that it never consented in writing to the assignment and therefore was not responsible for those items.

Thereafter, Kurtz decided to sell the business for about $95,000 and one Anthony Selensky was interested. Simultaneously, Autumn Grove attempted to terminate its lease with Kurtz and tentatively leased the business premises to a third party. Upon learning of Kurtz's difficulties, Selensky offered only $25,000.

The offer was eventually raised to $45,000, mostly payable by note, contingent upon Selensky's being able to negotiate a new lease with Autumn Grove. Kurtz agreed. Selensky and Autumn Grove signed a new lease at a greatly increased rental payment to Autumn Grove. Yet, Autumn Grove then refused to honor the new lease unless Kurtz paid $6500 for rent, the fire protection system and the common area charges it claimed were still in dispute. Subsequently, Selensky tried to sell, but his efforts faltered because

of Autumn Grove's insistence on these payments before it would cooperate. As a result, Selensky stopped paying on the note due Kurtz.

Autumn Grove started the lawsuit, seeking termination of the lease and the rights of Kurtz and underlying third parties. Kurtz counterclaimed, alleging tortious interference of contract and sought both compensatory and punitive damages. Kurtz later amended his counterclaim, adding claims of unreasonable withholding of consent to the assignment of the lease and breach of various covenants.

In a summary judgment proceeding, the trial court apparently dismissed Autumn Grove's complaint, ruling that it failed to give proper notice of termination. This left only the counterclaim.[1]

On the morning of trial, the court persuaded Kurtz to drop his claim that Autumn Grove tortiously interfered with the ongoing contractual negotiations between Selensky and him. The trial court also persuaded Kurtz to drop his allegation that Autumn Grove unreasonably withheld approval of the lease assignment and breached various covenants. Instead, the claim became one of improper termination of the lease by Autumn Grove.[2]

---

[1]A definitive order concerning the status of the complaint as either dismissed or still in effect was never made by the trial court. Neither party at oral argument was able to explain the present status of the complaint and this uncertainty exists even to this date. In any event, it appears that the court and all of the parties agreed that for purposes of the ensuing trial, this ruling left only Kurtz's counterclaim and Autumn Grove's reply as the governing pleadings.

[2]The amendment to the counterclaim was premised, in part, upon the trial court's belief that the parties had conducted their substantial pretrial negotiations on this basis. This may well have

At the close of evidence, the trial court *sua sponte* decided that the real question was whether Autumn Grove had unreasonably withheld its consent to assignment of the lease, the very issue it had earlier negotiated out of the case; it dropped the improper termination of the lease theory in favor of this and presented this question to the jury.

The jury found in the affirmative and assessed compensatory and punitive damages against Autumn Grove. Autumn Grove then brought this appeal, claiming prejudicial surprise in the eleventh hour amendments and also claiming that punitive damages cannot be collected for an underlying breach of contract action. We agree on both counts.

We acknowledge that the trial judge must be more than a referee, *see Schultz v. State,* 82 Wis. 2d 737, 742, 264 N.W.2d 245, 248 (1978), if he or she is to successfully assist the jury in seeking the truth. *See also* SCR 60.01(9). We also acknowledge that a trial court may *sua sponte* amend pleadings to conform to the proof. Sec. 802.09(1) and (2), Stats.

been the case, but Autumn Grove's objection to the amendments on the morning of trial suggests otherwise. In any event, this uncertainty could have been avoided had the trial court chosen, in its discretion, to *fully* note on the record the substance or a summary of these pretrial proceedings. While this is not expressly mandated under the supreme court rules, SCR 71.01(2)(f) does mandate the reporting of "[a]ny part or all of any court activity or proceeding as is necessary in the discretion of the trial court to ensure an adequate record." A summary of those pretrial discussions, which apparently dealt with the substantive issues between the parties as the case was readied for trial, would have greatly assisted us in reviewing the impact of the subsequent actions of the trial court.

277

The trial court's discretion is not unbridled, however. SCR 60.01(9) cautions a trial court not to act so as to "prevent the proper presentation of the case." Also, amendments and pleadings may not prejudice the objecting party. Sec. 802.09(2), Stats. Treading this fine line between proper management of the trial on the one hand and improperly usurping the functions of counsel on the other can sometimes be a hazardous exercise. It has resulted in a miscarriage of justice here.

■ Autumn Grove was prepared to try a tort case. Interference with contractual relations occurs where one who, without privilege to do so, induces or otherwise purposely causes a third party not to perform a contract. *Pure Milk Prods. Coop. v. National Farmers Org.*, 64 Wis. 2d 241, 258, 219 N.W.2d 564, 573 (1974). Proof of this allegation is altogether different than proof of improper termination of a lease, upon which the case was tried. Both also have different proofs than a claim of unreasonable withholding of consent to a lease assignment, the theory ultimately placed before the jury. We hold that the surprise to Autumn Grove prejudiced its defense of the case.

We also hold that the trial court's shifting of theories prejudiced Kurtz. It appears from the trial transcript and from our oral argument that the trial court induced Kurtz to operate under the impression that one can recover punitive damages when the underlying cause of action is one of contract, not tort. The trial court, in fact, stated that the "labels" as to whether the action was based upon a contract theory or tort theory were not important.[3]

---

[3]At one point, near the end of the trial, the court stated:

Wisconsin courts have consistently held that punitive damages are not available as a remedy in a breach of contract action. That proposition was first set forth in *Gordon v. Brewster,* 7 Wis. 309 (\*355) (1858), and has been followed in *Entzminger v. Ford Motor Co.,* 47 Wis. 2d 751, 177 N.W.2d 899 (1970), and more recently in *Brown v. Maxey,* 124 Wis. 2d 426, 369 N.W.2d 677 (1985). In *Entzminger,* the court stated:

> It is true there was a disregard for the plaintiff's right but this is true in every breach of contract.

THE COURT: Okay. Well, a quick study, there's no way I'm going to digest all those cases at 9 o'clock with the jury having been told we're starting at quarter to nine, so on. So my impression of the law certainly is punitive damages are available in non-tort actions, and it's no longer crucial what kind of label you put on something. I think we've gotten away from that in the law. I think we're interested in the substantive issues rather than what kind of action; some lawyer may not have chosen to denominate his lawsuit and certainly would allow another amendment, in exercising my discretion, if it is necessary to amend to allege something else to conform to the proof. ... Obviously my impression is they're available, has been my impression throughout and still is my impression, and the question labels, I'll certainly do whatever I can to change the label if that's necessary.

The court also stated:

> Mr. Cannon stated cases said you can't have [punitive damages] in contracts, but I'm not much of a label man myself; so I think that my ruling would probably be, "Hey, if you can have punitive damages in a negligence action, you can have them in a contract action too," and that's what the Court is trying to tell us, I think; that it's not limited to intentional torts which you used to think because we think punitives can only follow from wanton and intentional, outrageous conduct, et cetera, et cetera. So to me unless we continue in the dark ages and get results upon labels, *Wangen* also leads to the conclusion you can have punitives in breach of contract actions too.

Ford's breach did not have those characteristics which constitute a tort. Punitive damages are not allowed for a *mere breach of contract* .... [Emphasis added.]

*Entzminger,* 47 Wis. 2d at 757, 177 N.W.2d at 902–03. The phrase "mere breach of contract" and other language in recent cases appears to have caused some confusion for the bench and bar. Language in cases to the effect that "the availability of a punitive damage award is not dependent upon ... the underlying cause of action," *Brown,* 124 Wis. 2d at 431, 369 N.W.2d at 680, and "[p]unitive damages rest upon allegations which, if proved, demonstrate a particular kind of conduct on the part of the wrongdoer, which has variously been characterized in our cases as malicious conduct or willful or wanton conduct in reckless disregard of rights or interests," *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 267, 294 N.W.2d 437, 442 (1980), serve as the underpinning for the argument that punitive damages may be allowed in appropriate breach of contract cases. However, we conclude that, absent an explicit statement overruling *Gordon* and its numerous progeny, the supreme court has not by mere implication radically changed the common law of this state to allow punitive damages when the underlying cause of action is a breach of contract.[4]

---

[4]We note that two other appellate court decisions since *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 294 N.W.2d 437 (1980), one of which was published after *Brown v. Maxey,* 124 Wis. 2d 426, 369 N.W.2d 677 (1985), have stated that punitive damages are not allowed in breach of contract actions. *Dvorak v. Pluswood Wis., Inc.,* 121 Wis. 2d 218, 358 N.W.2d 544 (Ct. App. 1984), and *McMahon v. Brown,* 125 Wis. 2d 351, 371 N.W.2d 414 (Ct. App. 1985). We know of no cases and Kurtz cites no cases which have

The common law has evolved to recognize differences between civil actions for breach of contract and for tort. Causes of action in contract and in tort have historically had different purposes and protected different interests. *McDonald v. Century 21 Real Estate Corp.,* 132 Wis. 2d 1, 7, 390 N.W.2d 68, 70 (Ct. App. 1986). Where a contract is involved, in order for a claim in tort to exist, a duty must exist independently of the duty to perform under the terms of the contract.[5] Wisconsin does not recognize an inherent cause of action in tort for every negligent performance of a contractual obligation.[6] However, where a tort duty coincides with an obligation undertaken by contract, either a contract or a tort action will lie for its breach. W. Keeton, *Prosser and Keeton on The Law of Torts,* § 1, at 5 (5th ed. 1984). If that be the case, then

allowed the recovery of punitive damages in a breach of contract action without an underlying tort.

[5]"Ordinarily, a breach of a contract is not a tort, but a contract may create a state of things which furnishes the occasion of a tort." *Colton v. Foulkes,* 259 Wis. 142, 146, 47 N.W.2d 901, 903 (1951) (quoting and adopting 38 Am. Jur. *Negligence* § 20 (1941)). "[T]he 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort. . . . [T]here must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Landwehr v. Citizens Trust Co.,* 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983).

[6]It is also appropriate to point out that Wisconsin has not recognized a cause of action for "tortious breach of contract." *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978), recognized a separate tort action for bad faith in the breach of an insurance contract but only because the insurer was acting as a fiduciary. The duty imposed by the fiduciary relationship is critical because that duty exists independently of the contract. *See Dvorak,* 121 Wis. 2d at 220–21, 358 N.W.2d at 546.

punitive damages would be allowed. We are convinced that this is the length and breadth of *Brown.*

■

Section 752.35, Stats., authorizes the court of appeals to order a new trial if the real issue has not been fully tried or if it is probable that justice has been miscarried. Faced with the confusing procedures followed in this case, due in large part to the well-intentioned but misguided undertakings of the trial court and its erroneous view of the law of punitive damages, we order a new trial to assure that the real controversy will be fully tried. The issue of whether Autumn Grove tortiously interfered with Kurtz's contractual relations was one of the real issues in controversy; it was never tried. The original contractual allegations were also never really tried, though one of the claims did ultimately go to the jury. That issue should be retried so that the litigators have a full opportunity to place the proper evidence before the jury.

We reverse and remand for a new trial. The trial court shall allow such amendments to the pleadings as the parties deem necessary consistent with this decision and the applicable statutes and rules.

*By the Court.*—Judgment reversed and cause remanded with directions.