Hillard JACOBS and Beverly Jacobs, Plaintiffs,

v.

Gary KARLS and Mary Karls, Defendants-Third Party
Plaintiffs-Appellants,

v.

CALUMET EQUITY MUTUAL INSURANCE COMPANY, Third
Party Defendant-Respondent.

Court of Appeals

No. 92–3052. *Submitted on briefs April 22, 1993.—Decided
July 7, 1993.*

(Also reported in 504 N.W.2d 353.)

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the briefs of *Scott Lawrence* of *Lawrence & Cherella, S.C.* of St. Nazianz.

On behalf of the third party defendant-respondent, the cause was submitted on the briefs of *Donald H. Carlson* and *John T. Juettner* of *Riordan, Crivello, Carlson, Mentkowski & Stevens, S.C.* of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J.   Gary and Mary Karls appeal from a judgment finding that Hillard and Beverly Jacobs' failure or refusal to maintain a milking system on a farm leased to the Karlses was a breach of contract not covered under a comprehensive general liability (CGL) policy issued to the Jacobses by Calumet Equity Mutual Insurance Company. On appeal, the Karlses argue that the Jacobses' failure to fulfill a contractual promise to assume responsibility for all major farm repairs is an "occurrence" under the liability policy. Because we conclude that Wisconsin recognizes an independent common law duty to make repairs to leased premises on the part of a landlord who contracts to accept responsibility for major repairs, we reverse the circuit court's holding that the liability policy issued by Calumet did not provide coverage for the Jacobses' alleged failure to make repairs.

The Jacobses entered into a written lease for a farm with the Karlses for a three-year term. Appended to the written lease were "Special Conditions" in which, as landlords, the Jacobses contracted to be responsible for all major repairs of the buildings.[1] After the conclusion of the lease term, the Jacobses commenced a replevin action for several pieces of equipment they allege that the Karlses removed from the premises. In response to the replevin action the Karlses filed an answer and a counterclaim. In the counterclaim the Karlses alleged that the Jacobses were negligent in failing to perform their duties of repair and maintenance under the "Special Conditions" of the lease and alleged that the Jacobses breached their contractual duties of repair and maintenance.

The basis for the Karlses' grievance against the Jacobses is their contention that the milking system in the barn was defective. The Karlses assert that as a result of the defects in the milking system their dairy herd suffered teat injuries and recurring mastitis resulting in a decrease in milk production. The Karlses allege that the Jacobses were negligent in failing to respond to their requests to repair the milking system or in preventing service and repair by third parties hired by the Karlses. The Karlses seek compensatory damages for all expenses associated with the treat-

---

[1] The specific language of the "Special Conditions" provided:

1.  As to repairs on the buildings, it is agreed that Lessee (Karls) shall be responsible for minor repairs below $100.00 and also be responsible for damages caused by Lessee's acts, but only if not covered by Lessor's (Jacobs) insurance.

Major repairs on the house, barn and buildings and well shall be the responsibility of Lessor, if required, and not caused by the acts of the Lessee.

271

ment of the injury to the dairy herd and economic damages for the decrease in milk production.

The Karlses also filed a third-party complaint against Calumet. They allege that Calumet had issued the Jacobses a comprehensive general liability (CGL) policy that was in effect during the term of the lease. They further alleged that the insurance policy provided liability coverage for the Jacobses' negligence in failing to fulfill their contractual duties of repair and maintenance.

The circuit court granted Calumet's motion for summary judgment. The court found that the Karlses' claim that the Jacobses failed to make repairs was a breach of contract claim and that the Jacobses' inaction was not an "occurrence" under the insurance policy. The circuit court concluded that because a landlord's duty to repair was not found in the common law, the Karlses could not maintain a negligence action against the Jacobses. The court held that the insurance policy issued by Calumet did not provide coverage for the Jacobses' contractual liabilities and entered summary judgment dismissing the third-party complaint.

On appeal, the Karlses argue that the Jacobses' breach of contract led to results that constitute "occurrences" within the definition of that term in the CGL policy issued by Calumet. The Karlses reason that although the Jacobses' failure to repair the milking system is a breach of contract, the resulting injury to the dairy herd and decrease in milk production were "accidental;" therefore, the CGL policy issued by Calumet to the Jacobses provides liability coverage for the Jacobses' alleged negligence.

In response to the Karlses' argument, Calumet asserts that under Wisconsin law, a breach of contract or failure to perform a contract condition is not an

"occurrence" under a CGL policy. Calumet argues that a breach of contract without a common law duty independent from any duty created by the contract cannot be the basis for a negligence action against the Jacobses. Calumet claims that no common law duty existed on the Jacobses' part.

We review an order for summary judgment using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). That methodology is well known and need not be repeated here. When the only issue is whether the insurance policy covers the actions of the insured, the issue becomes a question of law. *Nelson v. Motor Tech, Inc.*, 158 Wis. 2d 647, 650, 462 N.W.2d 903, 905 (Ct. App. 1990). We review questions of law without deference to the circuit court. *Id.*

We begin our analysis with the general proposition that when the parties' relationship is defined by a contract, there must be an independent common law duty on the part of one party in order for the injured party to pursue a negligence action. *Id.* at 653, 462 N.W.2d at 906. Whether the Jacobses' failure or refusal to repair the milking system is actionable in tort and is an "occurrence" under Calumet's CGL policy requires us to ascertain whether, under the common law, the breach of a contract to be responsible for repairs imposes tort liability on the Jacobses.

In a decision where the Wisconsin Supreme Court adopted a rule that a landlord is under a duty to exercise ordinary care in the maintenance of the premises, the court discussed a landowner's common law duties and exceptions to those duties. *Pagelsdorf v. Safeco Ins. Co.*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979). The court

set forth the general rule that a "landlord is not liable for injuries to his tenants and their visitors resulting from defects in the premises." *Id.* at 740, 284 N.W.2d at 58. The court then enumerated several exceptions to the general rule of nonliability. The first exception was, "[t]he landlord is liable for injuries to the tenant or his visitor caused by a dangerous condition if he contracts to repair defects." *Id.* at 740, 284 N.W.2d at 59.

The supreme court cited three early decisions establishing this exception to the rule of nonliability. The first case is *Kurtz v. Pauly,* 158 Wis. 534, 149 N.W. 143 (1914). In *Kurtz,* the supreme court affirmed a judgment of the circuit court that, under the circumstances of the case, the landlord was not liable to the tenant for the injuries suffered when the tenant fell off a porch repaired by the landlord. The court cited an earlier decision, *Anderson v. Hayes,* 101 Wis. 538, 543, 77 N.W. 891, 892 (1899), for the proposition that a landlord is liable to a tenant if the landlord contracted to make repairs. *Kurtz,* 158 Wis. at 538–39, 149 N.W. at 145.

The second case cited in *Pagelsdorf* is *Flood v. Pabst Brewing Co.,* 158 Wis. 626, 149 N.W. 489 (1914), where the supreme court affirmed the denial of Pabst's motion to dismiss the complaint for failure to state a cause of action. The complaint alleged a child was injured when she fell through a cellar door that allegedly failed as the result of negligent construction and negligent failure of the landlord to repair the door. The *Flood* court held that where a landlord contracts to repair the leased premises, the failure to repair is a breach of a duty owed to anyone on the premises and the injured party has an action for negligence against the landlord. *Id.* at 632–33, 149 N.W. at 491. In his concurring opinion, Chief Justice Winslow explained

that when a landlord contracts to repair the premises, the landlord has voluntarily elected to retain the duty of ordinary care to keep the premises in a reasonably safe condition that is normally the duty of the person in possession of the premises. *Id.* at 634, 149 N.W. at 492 (Winslow, C.J., concurring).

The final case relied upon in *Pagelsdorf* is *Skrzypczak v. Konieczka,* 224 Wis. 455, 272 N.W. 659 (1937). This is another case where the tenant was injured after falling from a porch repaired by the landlord. The supreme court affirmed the dismissal of the tenant's complaint, one ground being that the landlord had not contracted to repair the premises. The supreme court held, "It is the settled law of this state that a tenant takes premises in the condition in which they are when he leases them, and the landlord is not liable to the tenant for injuries sustained through their want of repair unless he has contracted to repair them . . . ." *Id.* at 458, 272 N.W. at 661.

This unbroken line of decisions unquestionably confirms that Wisconsin has long recognized that, in addition to a breach of contract action, a tenant has a separate negligence action when the landlord has contracted to make repairs and the landlord's failure to exercise ordinary care in making repairs is a cause of the tenant's personal injury or property damage. *See Flood,* 158 Wis. at 632–33, 149 N.W. at 491. Wisconsin is not alone in permitting a tenant to maintain a negligence action against a landlord under such circumstances. Both the RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT § 17.5 (1976) and the RESTATEMENT (SECOND) OF TORTS § 357 (1965) recognize such a cause of action. In comments to RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, four rea-

sons are given to support this exception to the general rule that a landlord is not liable for the failure to make repairs to leased premises. The reasons are: first, "[t]he landlord's contractual undertaking, for consideration, to repair the premises or to keep them in repair;" second, "[t]he special relation between the parties, and the peculiar likelihood that the tenant will rely upon the landlord to make the repairs, and so will be induced to forego" repairs; third, "[t]he fact that the landlord retains a reversionary interest in the leased property, and so by his contract may properly be regarded as retaining or resuming the duty and responsibility of keeping his own premises in safe condition;" and fourth, social considerations. 2 RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT § 17.5 comment b.

In a scholarly article examining the general rule that a landlord is not liable for defective premises, the author discusses the exception that a landlord is liable in tort for a tenant's personal injuries or property damage caused by the breach of the landlord's covenant to repair. Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability?*, 1975 WIS. L. REV. 19 (1975). The author affirms that "[i]n the majority of jurisdictions . . . a contract to repair is sufficient to impose tort liability on the landlord. The contractual duty to repair creates and defines the tort duty of care. Both the tenant and third parties can recover for either personal injury or property damage." *Id.* at 60. The author also addresses the nature of the landlord's duty: "The lessor's duty under a contract to repair is to exercise reasonable care. The specific nature of the duty is dependent upon the terms of the contract." *Id.* at 61–62.

We conclude that in Wisconsin a landlord who contracts to make repairs to the premises assumes the duty to use ordinary care in keeping the premises in a safe and habitable condition. When the landlord fails or refuses to make promised repairs there is a violation of the duty to use ordinary care, and if that violation is a cause of personal injury or property damage, the injured party can assert a negligence cause of action. The Jacobses' promise to make repairs was an assumption of the common law duty to use ordinary care in making repairs. That the lease incorporates and redistributes the common law duty of ordinary care does not establish the lease as a source of that duty. *See Nowak v. Transport Indem. Co.,* 120 Wis. 2d 635, 639, 358 N.W.2d 294, 297 (Ct. App. 1984). Thus, the duty assumed by the Jacobses is independent of the contract. *See Nelson,* 158 Wis. 2d at 653, 462 N.W.2d at 906. Therefore, the circuit court erred when it held that the Jacobses' covenant to be responsible for major repairs did not create a common law duty actionable in tort and, consequently, that there was no coverage under Calumet's CGL policy because the Jacobses' failure or refusal to repair the milking system was nothing more than a breach of contractual duties.

*By the Court.*—Judgment reversed.