MADISON NEWSPAPERS, INC. and Arkwright Mutual Insurance Company, Plaintiffs-Appellants,

v.

PINKERTON'S INC. and Liberty Mutual Insurance Company, Defendants-Third Party Plaintiffs-Respondents,

Jeffrey J. BREUNIG and Economy Fire & Casualty Co., Third Party Defendants.

Court of Appeals

*No. 95–0699. Submitted on briefs October 9, 1995.—Decided February 29, 1996.*

(Also reported in 545 N.W.2d 843.)

468

For the plaintiffs-appellants the cause was submitted on the brief of *William A. LeMire* of *Robins, Kaplan, Miller & Ciresi* of Minneapolis, Minnesota and *John Walsh* of *Axley Brynelson* of Madison.

For the defendants-third party plaintiffs-respondents the cause was submitted on the brief of *Emile H.*

*Banks, Jr.,* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. Madison Newspapers, Inc. (MNI) appeals from an order for summary judgment dismissing an action in which it asserted claims in both contract and tort against Pinkerton's, Inc., for damage resulting from a fire set by a Pinkerton's employee while performing security services for MNI.

The trial court ruled: (1) given the contractual relationship between the parties, MNI had no independent cause of action for negligence against Pinkerton's; and (2) as a matter of law, Pinkerton's was not liable for the damage to MNI's facilities under the terms of the contract. MNI's appeal from those rulings raises only questions of law, which we consider de novo, owing no deference to the trial court's decision. *Green Scapular Crusade, Inc. v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525 (Ct. App. 1984).

We conclude that the trial court properly dismissed the negligence claim, but that it erred in holding that MNI had no cause of action against Pinkerton's based on the parties' contract. We therefore affirm in part and reverse in part, remanding the case to the trial court for further proceedings on the contract claim.

The basic facts are not in dispute. MNI, the publisher of Madison's two daily newspapers, contracted with Pinkerton's to provide security services at its facility. Under the contract, which we discuss in more detail below, Pinkerton's agreed to accept liability for

471

"negligen[t], fraudulent or dishonest acts" of its employees in the performance of their duties.

One of the security guards hired by Pinkerton's to work at MNI was Jeff Breunig. According to MNI, after Breunig's first weekend on the job, they came to suspect him of damaging some computer equipment and stealing a calculator and requested that his supervisors, Everett Isham and David Post, notify MNI of any unusual activities—including fires—occurring during Breunig's shifts.

The following Sunday, a small fire was set in the MNI building at approximately 5:40 a.m. Post and Isham were notified of the incident and came to the building to investigate. They notified the Madison police of the incident but did not immediately notify MNI. According to MNI, Post and Isham kept Breunig on duty that day despite their suspicions that he had been involved in setting the fire. A few hours later, Breunig—who, it turned out, had set the first fire—set a second fire which caused substantial damage to MNI's property.[1]

MNI sued, claiming that Pinkerton's had been negligent in providing security services and in supervising and training its personnel and had breached its service contract with MNI. Pinkerton's moved for summary judgment dismissing the action and, as indicated above, the trial court granted the motion.

## I. The Negligence Claim

MNI argues that the facts of the case give rise to a separate tort cause of action against Pinkerton's in addition to its claim for breach or misperformance of

---

[1] Breunig later pled guilty to arson and damage to property and was sentenced to one year in prison.

the parties' contract. In *McDonald v. Century 21 Real Estate Corp.*, 132 Wis. 2d 1, 390 N.W.2d 68 (Ct. App. 1986), we recognized that, under the common law, causes of action for tort and contract "have historically had different purposes and protected different interests," and we emphasized that difference by noting that " 'torts consist of the breach of duties fixed and imposed upon the parties by the law itself, *without regard to their consent to assume them. . . .*' " *Id.* at 7, 390 N.W.2d at 70, 71 (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 1, at 4 (5th ed. 1984)) (emphasis added).[2]

Thus, where the alleged tort may be seen as related to a contract between the parties, "[i]n order for . . . a cause of action in tort to exist, a duty must exist *independently of the performance of the contract.*" *Dvorak v. Pluswood Wisconsin, Inc.*, 121 Wis. 2d 218, 220, 358 N.W.2d 544, 545 (Ct. App. 1984) (emphasis added). Under this test, "the existence of a contract is ignored when determining whether [the] alleged misconduct is actionable in tort." *Id.*

---

[2] We stated:

> Put another way: "Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed."

*McDonald v. Century 21 Real Estate Corp.*, 132 Wis. 2d 1, 8 n.5, 390 N.W.2d 68, 71 (Ct. App. 1986) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 656 (5th ed. 1984)) (emphasis in *McDonald* omitted).

In *McDonald*, the plaintiffs entered into a residential listing contract with a real estate agent. The contract provided that the agent would prequalify potential buyers of their house, and when the agent failed to do so with respect to a buyer who ultimately reneged on his offer, the plaintiffs sued the agent in tort. We held that the negligent performance of a duty created by contract—the duty to prequalify—cannot, without more, create a *separate* cause of action for negligence. *McDonald*, 132 Wis. 2d at 9, 390 N.W.2d at 71. We said:

> "Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort." "The 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort. . . . [T]here must be a duty *existing independently of the performance of the contract* for a cause of action in tort to exist."

*Id.* at 6 n.3, 390 N.W.2d at 70 (emphasis added; quoted sources omitted; citations omitted). We went on to hold that because the real estate agent had no duty to prequalify potential buyers existing independently of the contract between the parties, the plaintiffs did not have a separate cause of action in tort. *Id.* at 8-9, 390 N.W.2d at 71. *See also Nelson v. Motor Tech, Inc.*, 158 Wis. 2d 647, 653, 462 N.W.2d 903, 906 (Ct. App. 1990) (in order to proceed in a tort action when the parties' relationship is defined by contract, there must be a common-law duty independent from any duties created by the contract).

This case presents a similar situation. It is undisputed that Pinkerton's relationship with MNI was wholly the result of its contract to provide security services to the MNI building. Indeed, the only reason Pinkerton's employees were on MNI's property in the first place was because of the contract, and whatever tasks and obligations Pinkerton's undertook in this regard originated not in some independently existing common-law duty but in the terms and conditions of the document.

MNI disagrees. Citing *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951), it argues that Pinkerton's had an independent common-law duty to "use reasonable care in providing professional security guard services . . . ." We think *Colton* is inapplicable. In that case, the supreme court allowed a tort action to proceed against a defendant who allegedly negligently repaired the plaintiff's porch, on the basis that there was a general duty of due care in repairing the porch to avoid personal injury—a duty that existed independent of the parties' contract. *Id.* at 146-47, 47 N.W.2d at 903-04. In a later case, *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983), the court emphasized that, to be actionable, the tort claim must exist at common law independent of the parties' contract, and pointed out that, in *Colton*, the plaintiff had a negligence cause of action "[e]ven without a contract, . . . since the defendant . . . had a general common law duty to use reasonable care in repairing the porch."

In a more recent case, the court again cautioned that *Colton* should not be read as weakening the proposition that, for there to be a cause of action in tort between parties to a contract, the plaintiff must show the existence of a duty " 'existing independently of the

performance of the contract . . . .' " *Greenberg v. Stewart Title Guar. Co.*, 171 Wis. 2d 485, 495, 492 N.W.2d 147, 152 (1992) (quoting *Landwehr*, 110 Wis. 2d at 723, 329 N.W.2d at 414). The *Greenberg* court stated:

> [W]e later explained the limits of *Colton* in *Landwehr*. In *Landwehr*, we explained that our language in *Colton* was meant to indicate that the " 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort." We concluded that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." We reaffirm that holding today.

*Id.* at 495, 492 N.W.2d at 152 (citations omitted; quoted sources omitted).

Finally, in a three-sentence argument without elaboration or citation to authority, MNI generally suggests that such an independent duty exists in this case because Pinkerton's advertising materials described it as a large, "sophisticated" and well-supervised company. At another point in its brief, again without citation to authority, MNI suggests that Pinkerton's "had an independent, common law duty to use reasonable care in providing professional security guard services to Madison Newspapers, including monitoring and supervising Bruenig [sic]." We are not persuaded. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992) (where legal authority is not cited and arguments "are not developed themes reflecting . . . legal reasoning" but are supported by only general statements, appellate court may decline to review them).

For the foregoing reasons, we are satisfied that the trial court did not err in dismissing MNI's tort claim.

## II. The Contract Claim

MNI next argues that the trial court should not have dismissed its claim that Pinkerton's is liable for the fire damage under the terms of the parties' contract in which Pinkerton's accepts responsibility for dishonest or negligent acts committed by its employees in the course of their employment.[3]

The trial court, noting that these provisions reflect well-recognized principles of *respondeat superior*, under which an employer is liable for torts committed by employees while acting within the scope of their employment, *Olson v. Connerly*, 156 Wis. 2d 488, 498, 457 N.W.2d 479, 483 (1990), concluded that under the language of the contract Pinkerton's was not responsible for Breunig's criminal acts because they were plainly beyond the scope of his employment.

MNI concedes that Breunig's actions were outside the scope of his duties. The acts for which it seeks redress, however, are not Breunig's; rather, it maintains that Pinkerton's supervisory employees, Post and Isham, were negligent in failing to properly supervise Breunig and in failing to take appropriate steps to prevent the second fire, once they learned of the first fire,

---

[3] Specifically, the contract states:

6. Pinkerton's does not insure against theft, loss or damage to equipment, furniture, machines, fixtures or other property real or personal, rented, leased or otherwise possessed by the client. Therefore it cannot assume any liability for theft, loss or damage other than that resulting from the sole negligence, fraudulent or dishonest acts of its employees.

. . . .

8. Pinkerton's accepts liability for any and all acts of negligence on the part of any of its employees in the performance of his or her duties.

477

and that their negligence renders Pinkerton's liable under the terms of the parties' contract.[4]

Pinkerton's does not suggest that the language of the contract making it responsible for the negligent or dishonest acts of its employees in the performance of their duties would not apply to supervisory employees such as Post and Isham. Rather, it argues from the depositions and other proofs put forth by the parties on the summary judgment motion that Pinkerton's, through its agents Post and Isham, was not negligent.

We have often said that questions of negligence are rarely susceptible to resolution on motions for summary judgment. *Wagner v. Dissing*, 141 Wis. 2d 931, 946, 416 N.W.2d 655, 661 (Ct. App. 1987); *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 517, 383 N.W.2d 916, 920 (Ct. App. 1986). This is so because such questions almost invariably involve conflicting evidence and we do not decide issues of fact in summary judg-

---

[4] Pinkerton's argues that we should not consider the argument because MNI raises it for the first time on appeal. *See Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361, 365 (Ct. App. 1992) (appellate court will not as a rule consider arguments raised for the first time on appeal). Our review of the record, however, establishes to our satisfaction that MNI raised this issue in both its complaint and its brief opposing the motion for summary judgment.

Even so, the waiver rule is "[one] of judicial administration" which we may, in the proper exercise of our discretion, choose not to employ in a given case. *DOR v. Mark*, 168 Wis. 2d 288, 293 n.3, 483 N.W.2d 302, 304 (Ct. App. 1992). In this appeal we believe it is appropriate to consider the issue because MNI argued the point on the summary judgment motion—even though the trial court did not separately consider it—and because we do not finally decide the issue but remand for trial on MNI's claim.

ment proceedings. *Elsen*, 128 Wis. 2d at 511, 383 N.W.2d at 917. The process is not a " 'short cut to avoid a trial' "; indeed, the methodology was developed to prevent trial by affidavit or deposition. *Id.* at 511, 383 N.W.2d at 917-18 (quoted source omitted). Our role on appeal from a summary judgment is limited to determining whether a factual issue exists, resolving any doubts in that regard against the party moving for summary judgment. *Id.* at 512, 383 N.W.2d at 918. And if the material presented on the motion is subject to conflicting factual interpretations or inferences, or if reasonable people might differ as to its significance, summary judgment should be denied and the matter remanded for trial. *Kara B. v. Dane County*, 198 Wis. 2d 24, 49, 542 N.W.2d 777, 788 (Ct. App. 1995), *review granted*, 199 Wis. 2d xxxv, 546 N.W.2d 468 (Jan. 16, 1996); *Elsen*, 128 Wis. 2d at 512, 383 N.W.2d at 918.

■

Here, the parties dispute several issues of material fact. MNI asserts that although Post and Isham were informed that Breunig might have been involved in the earlier theft and damage to MNI property and were requested to immediately report anything unusual occurring during his shifts—and although they in fact suspected Breunig of setting the first fire—they not only allowed him to remain on MNI premises but asked him to remain past his assigned work time. Pinkerton's, citing deposition testimony, maintains that Post did not consider Breunig a suspect to a greater degree than any other employee present at the building that day. Pinkerton's also asserts that Post and Isham fulfilled all their obligations to MNI, pointing again to depositions suggesting that they had never been directed to contact MNI immediately about suspicious occurrences on Breunig's shift. We see this as precisely

the type of case where conflicting facts and factual assertions render summary judgment inappropriate with respect to these issues.

For these reasons, we reverse the order insofar as it granted Pinkerton's motion for summary judgment dismissing MNI's contract claims, and we remand to the trial court for further proceedings with respect to those claims.

*By the Court*—Order affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion.

DYKMAN, J. (*concurring in part; dissenting in part*). I am concerned that, without intending to do so, the majority may have taken a significant step backward in Wisconsin negligence law. Cases asserting both tort and contract claims are not new. For many years, plaintiffs have been asserting negligence and contract claims arising out of the same set of facts. In *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951), the plaintiff hired a carpenter to repair a porch railing. The complaint alleged that the carpenter did so negligently, causing the plaintiff's injuries when the plaintiff leaned against the railing and it collapsed. *Id.* at 143-44, 47 N.W.2d at 902. The carpenter moved to dismiss the complaint, asserting that the plaintiff's only remedy was in contract. *Id.* at 145, 47 N.W.2d at 903. In holding that the plaintiff's complaint stated a claim in tort, the supreme court reasoned:

> Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract.

> Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care. Thus, a person who contracts to make repairs can be held liable for his negligence in doing the work.

*Id.* at 146, 47 N.W.2d at 903 (quoted source omitted).

*Colton* has not been overruled. Indeed, in *Greenberg v. Stewart Title Guar. Co.*, 171 Wis. 2d 485, 495, 492 N.W.2d 147, 152 (1992) (citations omitted), the supreme court said:

> In *Landwehr [v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983)], we explained that our language in *Colton* was meant to indicate that the " 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort." We concluded that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." We reaffirm that holding today.

In *Milwaukee Partners v. Collins Engineers, Inc.*, 169 Wis. 2d 355, 485 N.W.2d 274 (Ct. App. 1992), we considered the exact issue facing us in this case: whether a tort duty exists independent of a contractual obligation. A building owner asserted a negligence claim against an engineering firm which had negligently failed to discover that the building was structurally unsound. *Id.* at 359-60, 485 N.W.2d at 275-76. We decided:

As we have seen, Milwaukee Partners' complaint alleges that Collins Engineers "failed to exercise the degree of care, skill, and judgment" in making the inspection "usually exercised under like or similar circumstances by engineers licensed to practice in Wisconsin." This allegation states a claim in tort if Collins Engineers owed Milwaukee Partners a duty of due engineering care in the fulfillment of its contractual obligations.

*Id.* at 361, 485 N.W.2d at 276 (quoted source omitted). *See also Jacobs v. Karls,* 178 Wis. 2d 268, 277, 504 N.W.2d 353, 356-57 (Ct. App. 1993) (notwithstanding a contract, a landlord has an independent duty to use ordinary care in keeping premises in safe condition and the tenant may sue in tort for breach of this duty). I do not think it is possible to distinguish the instant case from *Milwaukee Partners.*

How then does the majority analyze this case? First, it concludes that this case is indistinguishable from *McDonald v. Century 21 Real Estate Corp.,* 132 Wis. 2d 1, 390 N.W.2d 68 (Ct. App. 1986). Then it declines to review the issue of whether MNI's complaint states a negligence claim because MNI has failed to discuss any cases addressing the concept of "duty" in Wisconsin. I would not dissent if this was the only reason the majority concluded that MNI could not prevail on its negligence claim. But it is the majority's handling of *McDonald* which concerns me.

First, our ultimate conclusion in *McDonald* was, as here, that the appellant failed to cite authority to support their position. But I also believe that an examination of *McDonald's* facts shows that despite Wisconsin's broad definition of duty, it was not foreseeable that the real estate agency's failure to prequalify buyers would cause damages. Second, because the

majority relies on *McDonald* alone, it does not consider *Milwaukee Partners.* I have explained why that case, one decided more recently than *McDonald,* should control the issue here. Third, and most importantly, I believe that Wisconsin's concept of "duty" requires a different result.

The majority holds that Pinkerton's had no duty to MNI by reasoning:

> Indeed, the only reason Pinkerton's employees were on MNI's property in the first place was because of the contract, and whatever tasks and obligations Pinkerton's undertook in this regard originated not in some independently existing common-law duty but in the terms and conditions of the document.

Majority op. at 475. But I do not think we can conclude that Pinkerton's had no independent duty to MNI without considering how Wisconsin law defines "duty" in negligence cases. I will therefore review some of the cases which explain that concept.

I start with *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1299-1300 (7th Cir. 1991) (footnotes omitted), where the court said:

> Wisconsin cases have sustained causes of action analogous to the tort of negligent supervision of employees. In *Kamp v. Coxe Brothers & Co.,* 122 Wis. 206, 99 N.W. 366 (1904), the Wisconsin Supreme Court examined whether a wrongful death action could exist against an employer when an incompetent employee failed to warn a fellow employee of danger and that employee was killed. The court held that "the master who negligently or knowingly employs or retains an incompetent servant is liable for injuries thereby resulting to fellow servants who are not themselves negligent." *Id.*[,] 99 N.W.2d at 341. The court reasoned further that

one "who knowingly exposes another to an imminent peril should respond for the result." *Id.* While the facts and, to some extent, the policy concerns underlying the *Kamp* decision are analogous to this case, it is not controlling. The Wisconsin Supreme Court's holding is limited to interpreting an exception to the common law fellow-servant rule that a master has a duty to select servants who will not endanger fellow servants through negligence on the job.

Later Wisconsin cases have recognized claims arising from the failure to supervise adequately the work of an independent contractor. *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 214 N.W.2d 764, 765 (1974) (architect allegedly failed to supervise adequately the construction of a building); *Laesch v. L & H Indus., Ltd.*, 161 Wis. 2d 887, 469 N.W.2d 655, 657 (1991) (railroad allegedly failed to supervise adequately a contractor hired to remove rails from a right of way). Also, in the context of medical malpractice, the Wisconsin Supreme Court has held that a hospital has a duty to employ competent physicians. *Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 301 N.W.2d 156, 170-71 (1981) (hospital had a duty to hire competent doctors which it could breach by allowing an unqualified surgeon to perform negligently an operation).

I realize that *Midwest* found no cause of action in negligence for reasons not relevant here and that we are not bound by federal decisions on state issues. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704, 712-13 (1983). Nonetheless, the Wisconsin cases cited in *Midwest* lead me to the conclusion that Wisconsin recognizes a cause of action in negligent training or supervision. If we expand our inquiry from negligent training or supervision cases to

cases discussing the concept of duty in general, then this result is confirmed.

Wisconsin takes a minority view on this subject, and we should carefully examine what that concept entails. A good example is *A.E. Inv. Corp.*, 62 Wis. 2d at 483-85, 214 N.W.2d at 766-67 (citations omitted), where the court said:

> We believe that the narrow concept of duty relied on by the defendant architect has long been discarded in Wisconsin law. The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. This is the view of the minority in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99. This court . . . expressly adopted the *Palsgraf* minority rationale in *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 77 N.W.2d 397. The history of this court's rejection of the no duty-no liability concept of the majority in *Palsgraf* is capsulized in *Schilling v. Stockel* (1965), 26 Wis. 2d 525, 531, 133 N.W.2d 335. . . .
>
> . . . .
>
> A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.
>
> . . . .
>
> As held in *Schilling*, once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the

question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.

In *Schuster v. Altenberg*, 144 Wis. 2d 223, 236-38, 424 N.W.2d 159, 165 (1988) (citations omitted), a more recent iteration of Wisconsin's view of "duty," the court said:

> [I]t is a fundamental precept of Wisconsin negligence law that "[t]he concept of duty in Wisconsin, as it relates to negligence cases, is inexorably interwoven with foreseeability." . . . .
>
> More generally, the . . . cases demonstrate that reliance upon a no duty-no liability theory is misplaced in Wisconsin: a "duty" exists when it is established that it was foreseeable that an act or omission to act may cause harm to someone.

More recently, the supreme court restated this issue succinctly: "Wisconsin law considers conduct to be negligent if it involves a foreseeable risk of harm to anyone. In Wisconsin, the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability." *Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis. 2d 627, 644, 517 N.W.2d 432, 439 (1994).[1] Thus, Wisconsin law requires that we look at foresee-

---

[1] The court explained the breadth of its rule:

> In *Osborne v. Montgomery*, 203 Wis. 223, 234 N.W. 372 (1931), the court adopted the dissenting opinion of Judge Andrews in *Palsgraf* on the concept of duty and foreseeability: "Everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others . . . . Not only is he wronged to whom harm might reasonably be expected to result, but he also who is in fact injured, even if he be outside what would generally be thought to be the danger zone . . . ." *Palsgraf*, 248 N.Y. at 350.

*Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis. 2d 627, 644 n.12, 517 N.W.2d 432, 439 (1994).

ability when determining whether Pinkerton's had a duty to MNI to supervise its employees so as to avoid harm to its clients.

We must examine MNI's complaint to see whether it alleges that Pinkerton's actions carried a foreseeable risk of injury. The pertinent allegations of negligence are:

18. At all times material herein, Pinkerton's owed plaintiff MNI a *duty of reasonable care with respect to providing necessary security, accessories, supervision and training of security personnel at said Madison, Wisconsin, facility and were required to use reasonable care in the selection, hiring, training and supervision of security and fire protection personnel assigned to provide said service.*

. . . .

20. Defendant Pinkerton's knew or should have known of the anti-social and dangerous propensities of said Jeffrey Breunig and the foreseeable harm to others that might result from employing and assigning said Jeffrey Breunig as a security and fire protection guard.

21. Defendant Pinkerton's *failed to use reasonable care and was otherwise careless and reckless with respect to providing necessary security guards and supervision to ensure satisfactory security and fire protection at said Madison, Wisconsin, facility,* including, but not limited to, the following particulars:

A. Failure to use reasonable care in the selection, investigation and training of security and fire protection personnel;

B. Failure to use reasonable care in the supervision of security and fire protection personnel;

C. Failure to use reasonable care to provide necessary and adequate fire protection security services;

D. Failure to properly investigate plaintiff MNI's suspicions that said Jeffrey Breunig was not an appropriate person to be a security guard;

E. Failure to remove said Jeffrey Breunig from the premises or properly supervise him following the first fire on September 20, 1987;

F. Failure to conduct an appropriate background check on said Jeffrey Breunig before hiring him as a security guard;

G. Failure to properly train said Jeffrey Breunig after hiring him as a security guard; and

H. Otherwise failed to exercise the care and skill required of security and fire protection guards.

If, as MNI's complaint alleges, Pinkerton's was careless and reckless in providing the necessary security, accessories, supervision and training of security personnel, was it not foreseeable that some harm (not necessarily the harm that occurred) might have come to someone (not necessarily a client) who came in contact with an unsupervised and untrained security guard? Stated differently, if Pinkerton's failed to conduct the appropriate background check of an employee before hiring him or her, was it not foreseeable that some harm could come to someone who dealt with the guard?

I conclude that a failure to check a security guard's background, a failure to remove or warn MNI of a sus-

pected arsonist, and a failure to supervise the guard when Pinkerton's knew, or ought to have known, of the guard's dangerous propensities would, if proven, have been a breach of Pinkerton's duty to its clients. That is all that is required under Wisconsin's approach to "duty" in negligence cases. And that is why I respectfully dissent from part I of the majority's decision.